1997 SD 36

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Joseph POLLMAN, Defendant and Appellant.**

No. 19486.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1997.

Decided April 9, 1997.

Mark Barnett, Attorney General, Craig M. Eichstadt, Deputy Attorney General, Pierre, for Plaintiff and Appellee.

Richard L. Johnson, Sioux Falls, for Defendant and Appellant.

KONENKAMP, Justice.

[¶ 1.] Joseph Pollman was convicted of stalking after he veered his tractor toward Melvin Stahl on a narrow gravel road, repeatedly pursued him to the fields he worked, and once followed him into his place of worship. In the way the court instructed the jury, stalking consisted of making a credible threat towards or following or harassing another, with intent to put the victim in reasonable fear of death or great bodily injury. Assuming the correctness of these instructions, was the evidence sufficient to constitute stalking? We answer yes, considering the record in a light most favorable to the verdict, and affirm.

## Facts

[¶ 2.] Pollman, a man in his fifties, farms near Bridgewater across the road from Stahl. For many years, these men interacted amicably. They are, in fact, distantly related by marriage. Testimony differs about the reasons, but since the late 1980's, their acrimony steadily increased. By one explanation, problems began over the care their families gave to Jacob Tschetter. On his death, Tschetter bequeathed land to Pollman's sons and nothing to Stahl. Another version holds their ill will arose from a sale of allegedly defective soybean seed. On the other hand, the Stahls' purchase of land from Pollman's 1993 bankruptcy estate may have created resentment. In any event, hostility intensified through several events leading to Pollman's conviction. A temporary restraining order was issued against Pollman on October 14, 1994, prohibiting him from having any contact with the Stahls, including entering onto their land. A permanent injunction followed on December 29, 1994, which added to the terms of the TRO by restraining Pollman from being within 600 feet of any Stahl family member.

[¶ 3.] Encounters continued despite the court orders, with the most serious incident occurring on May 31, 1995. As Stahl drove his pickup along the road intersecting his and Pollman's land, he met Pollman coming in the opposite direction in a farm tractor, pulling a manure spreader. Stahl said he moved aside as far as possible; Pollman did not pull over, but swung his rear tractor tire into Stahl's vehicle, causing damage to the side of the truck. Pollman later testified he believed the vehicles never made contact, but even so, he could not have pulled over any further without running into fence posts. A witness for Pollman, Kevin Jucht, said Stahl admitted to him that he had backed his combine into his pickup creating the damage he said Pollman caused. Stahl conceded he had talked to Jucht, but insisted Jucht's comments about the pickup were a "blatant lie."

[¶ 4.] During the 1994 harvest, Pollman wrote "kiss ass" and "Stahl kiss ass" on the sides of two buildings on property Pollman was farming. After the 600 foot buffer order, Pollman also wrote "D. head 600 feet."

These words were approximately two feet high and remained on the buildings for several months, in full view of the fields Stahl was farming. At trial, Pollman insisted he was merely expressing his free speech rights.

[¶ 5.] Matters worsened, according to Stahl, when Pollman would follow him along the road as he traveled to work in the fields. Then Pollman would stand and watch him for twenty or thirty minutes. Once, Pollman even intruded upon Stahl's worship at Zion Mennonite church in Bridgewater. The Stahls regularly attended there; Pollman did not. Just before a special revival service, Pollman telephoned an usher to arrange for seating directly behind the Stahls. When the service began, however, those pews were full, so Pollman sat further back. After the service, he waited in the restroom and in his vehicle, but never initiated contact with the Stahls. Stahl also asserts Pollman removed boundary stakes on a disputed property line, moved a rock over this line onto Stahl's land, and intentionally tried to alter Stahl's phone service. Daniel Stahl, Melvin's brother, observed Pollman trespassing on Melvin's property in July 1995 and saw him cutting ruts in a ditch to interfere with drainage.

[¶ 6.] Pollman was indicted in July 1995 on two counts: (1) intentional damage to property (Stahl's pickup) in violation of SDCL 22–34–1, and (2) stalking in violation of SDCL 22–19A–1 & –2. A jury acquitted on the first count and convicted on the second. Pollman was sentenced to eighteen months in the penitentiary, which was suspended on several conditions, including that he serve twelve days in the McCook County jail. Pollman appeals, questioning the sufficiency of the evidence and challenging the court's instructions.

## Analysis and Decision

### [¶ 7.] 1. Sufficiency of the Evidence for Stalking

[¶ 8.] Our review of challenges to sufficiency of evidence is well-settled:

In determining the sufficiency of the evidence on review, the question presented is whether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt be-

yond a reasonable doubt. *State v. Lewandowski*, 463 N.W.2d 341, 343–44 (S.D. 1990). In this review, we must accept that evidence, and the most favorable inferences to be fairly drawn therefrom, which will support the verdict. *Id.* at 344 (citations omitted). In determining the sufficiency of the evidence, this Court will not " 'resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence.' " *State v. Hanson*, 456 N.W.2d 135, 139 (S.D.1990)(quoting *State v. Faehnrich*, 359 N.W.2d 895, 900 (S.D.1984)). No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt. *State v. Bartlett*, 411 N.W.2d 411, 412 (S.D. 1987).

*State v. Two Bulls*, 1996 SD 53, ¶ 17, 547 N.W.2d 764, 767 (1996) (quoting *State v. Wall*, 481 N.W.2d 259, 262 (S.D.1992)).

[¶ 9.] Pollman was charged under the following two statutes:

> *SDCL 22–19A–1. Stalking as a misdemeanor.* Any person who willfully, maliciously, and repeatedly follows or harasses another person or who makes a credible threat to another person with the intent to place that person in reasonable fear of death or great bodily injury is guilty of the crime of stalking. Stalking is a Class 1 misdemeanor.

> *SDCL 22–19A–2. Violation of a restraining order, injunction or protection order as felony.* Any person who violates § 22–19A–1 when there is a temporary restraining order, or an injunction, or a protection order, in effect prohibiting the behavior described in § 22–19A–1 against the same party, is guilty of a Class 6 felony.

The court's Instruction No. 10 purported to follow these statutes:

> The elements of the offense of stalking as charged in Count II of the indictment, each of which the state must prove beyond a reasonable doubt, are:

(1) That at the time and place alleged in the indictment Joseph Pollman did willfully, maliciously, and repeatedly follow or harass another person, to-wit: Melvin Stahl, or make a credible threat to another person, to-wit: Melvin Stahl.

(2) That the defendant did so with the intent to place Melvin Stahl in reasonable fear of death or great bodily injury.

(3) That at such time and place a temporary restraining order, or an injunction was in effect prohibiting such behavior.

Pollman contends this instruction misaligns the required elements in SDCL 22–19A–1.

■ [¶ 10.] As parsed in the statute, the words "with the intent to place that person in reasonable fear of death or great bodily injury" only apply to the previous phrase, "who makes a credible threat to another person." Instruction 10 incorrectly couples "with the intent to place that person in reasonable fear" to both the "credible threat" language and to the "any person who willfully, maliciously, and repeatedly follows or harasses another person" phrase. The result with which Pollman takes issue, then, is that the jury, in order to find him guilty of stalking, had to find the threats, following, and harassment were all executed with intent to put Stahl "in reasonable fear of death or great bodily injury." He asserts the faulty configuration of elements for stalking became the law of the case because neither party specifically objected to it. *See Estate of Billings v. Jehovah Witnesses*, 506 N.W.2d 138, 142 n2 (SD 1993). Furthermore, neither side challenged this misarrangement of elements on appeal, so although we recognize the error, the issue is not squarely before us.* Sufficiency of the evidence is the question.

■ [¶ 11.] First, the instruction in no way prejudiced defendant; it made the State's burden only more onerous. From the evidence adduced, the jury could have concluded Pollman willfully, maliciously, and repeatedly followed or harassed Stahl as required in Element 1 and did so with intent to place Stahl in reasonable fear of bodily in-

---

* In 1993, the Legislature amended SDCL 22–19A–1 substituting the word "or" for "and" between the "harasses" and the "credible threat" clauses, thus making the elements of the offense disjunctive. South Dakota criminal pattern jury instructions have not been changed to reflect the amendment, hence the court's incorrect listing of elements in Instruction 10.

jury or death as required in Element 2. On the other hand, if believed by the jury, the tractor incident was enough in itself to convict Pollman absent proof of following or harassing. A "credible threat" is "a threat made with the intent and the apparent ability to carry out the threat. A credible threat need not be expressed verbally." SDCL 22-19A-6. Intentionally swerving toward another's vehicle with a tractor may well put a person in reasonable fear of death or great bodily injury, and the jury could fairly infer that was Pollman's intent. Though Pollman and Jucht may have sworn no impact between tractor and truck occurred, and that Stahl caused the damage himself, it was for the jury to weigh this evidence and decide whom it found more credible. *State v. New*, 536 N.W.2d 714, 719 (S.D.1995). Jurors apparently believed at least one of the alternatives set out in Element 1 in Instruction 10, as well as found intent as required in Element 2. We cannot disturb that decision, as there was sufficient evidence from which the jury could conclude beyond a reasonable doubt Pollman intended to put Stahl in reasonable fear of death or great bodily injury. *State v. Sprik*, 520 N.W.2d 595, 601 (S.D.1994)(" 'In making our determination, this Court will accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict.' ")(quoting *State v. Davi*, 504 N.W.2d 844, 856 (S.D.1993)).

[¶ 12.] Pollman believes his acquittal on the intentional damage to property charge stemming from the same tractor incident invalidates his stalking conviction, as the two verdicts are inconsistent. After all, his attorney argues, how can the jury disbelieve Stahl's testimony that his truck was hit with the tractor, but still find Pollman guilty of using the tractor to commit a credible threat? This is unpersuasive—no damage need be done to consummate a threat. Furthermore, intentional damage to property in the first degree as charged in the indictment required proof the damage exceeded $500. If it found the damage was less, the jury could have acquitted on that basis. Finally, we know of no rule which makes intent for one violation provable only with evidence of a conviction on another. *See State v. McGill*,

536 N.W.2d 89, 94 (S.D.1995)(the State can prove all elements of a crime, including intent, with circumstantial evidence).

[¶ 13.] SDCL 22-19A-4 provides: "For the purposes of this chapter, 'harasses' means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose." Further, "course of conduct" is defined in SDCL 22-19A-5 as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.' " The evidence presented to the jury supports proof of intent to cause reasonable fear of great bodily injury or death, along with proof that Pollman "willfully ... harass[ed]" Stahl or made a "credible threat" against him, or both. We affirm on this issue.

[¶ 14.] **2. Stalking—Temporary Restraining Order**

[¶ 15.] Pollman argues the court erred in using language in its instructions referring to actions occurring when a "temporary restraining order" was in effect. His indictment did not mention a TRO, but only charged him with acting "at a time when there was an injunction or protection order in effect." Instructions are viewed as a whole and will be held sufficient if they correctly state the law and inform the jury. *State v. St. Cloud*, 465 N.W.2d 177, 181–82 (S.D.1991). *See also Sommervold v. Grevlos*, 518 N.W.2d 733, 739 (S.D.1994); *Ainsworth v. First Bank of South Dakota*, 472 N.W.2d 786, 788 (S.D.1991); *Larson v. Kreiser's, Inc.*, 472 N.W.2d 761, 762 (S.D.1991); *Herren v. Gantvoort*, 454 N.W.2d 539, 542 (S.D.1990). A temporary restraining order is a form of injunction; that is, it prohibits action temporarily pending a hearing on the merits of a permanent injunction. *See generally Golden v. Oahe Enterprises, Inc.*, 90 S.D. 263, 240 N.W.2d 102 (1976). We find Pollman's distinction immaterial, and thus the jury was adequately instructed on this issue.

[¶ 16.] Affirmed.

[¶ 17.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.