#23739-a-PER CURIAM
**2006 SD 51**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DANIEL STAHL AND MELVIN STAHL,    Plaintiffs and Appellees,

  v.

JOSEPH A. POLLMAN a/k/a JOSEPH
WOLLMAN a/k/a JOSEPH POLLMAN,    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
McCOOK COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RONALD K. MILLER
Judge

\* \* \* \*

MICHAEL E. UNKE        Attorney for plaintiffs
Salem, South Dakota       and appellees.

ANGELA M. COLBATH      Attorney for defendant
Rapid City, South Dakota     and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 23, 2006

OPINION FILED **06/14/06**

PER CURIAM

[¶1.]        Joseph Pollman appeals the denial of his motion to vacate a permanent injunction.  We affirm.

FACTS

[¶2.]        Pollman, Daniel Stahl and Melvin Stahl are from rural McCook County and own tracts of property that are close to one another.  Daniel Stahl and Melvin Stahl are brothers and Daniel's wife is a sister to Pollman's wife.  At some point in time, severe acrimony developed between Pollman and the Stahls.  The record suggests that one of the causes was the Stahls' purchase of some land formerly owned by Pollman at a bankruptcy sale.

[¶3.]        Starting in 1993 and continuing through 1994, Pollman began engaging in a series of bizarre, harassing, and intimidating acts directed at the Stahls.  He appeared at their residences and demanded money from them.  He also threatened suicide and cried uncontrollably, causing the Stahls' wives and children to fear his actions.  On another occasion, Pollman sat behind Daniel Stahl during a church service.  Pollman was not a member of the church and Daniel later learned that Pollman had tried to make arrangements with an usher to sit directly behind Daniel during the service.  In another incident, Pollman drove his tractor to Melvin Stahl's residence late at night and used it to tear large holes in the driveway.  As a result, Melvin had to use his loader to repair the damage and make the driveway useable.

[¶4.]        Pollman repeatedly trespassed upon the land the Stahls had purchased at the bankruptcy sale and continued to take property that did not belong to him from that land.  Pollman also made a number of harassing and

annoying telephone calls to the Stahls' residences. Among the more bizarre incidents, Pollman took a bull from Melvin Stahl's property in mid-1993, kept it hidden for six months and then returned it at midnight on January 2, 1994. Pollman also shot and killed Melvin's family dog and bragged to others that he had lured the dog away so that he could kill it.

[¶5.]      Numerous incidents of the foregoing nature distressed the Stahls and led them to commence injunction proceedings against Pollman in October 1994. As part of the injunction action, the Stahls obtained a temporary restraining order limiting Pollman's contact with them. Even before the hearing on the injunction, allegations were raised that Pollman had violated the restraining order. The hearing on the injunction was held on December 12, 1994 and, on January 5, 1995, the trial court entered a permanent injunction forbidding Pollman from having any contact with the Stahls, from going upon their property and from going within 600 feet of any location where the Stahls or any of their immediate family members might be located.

[¶6.]      The Stahls' injunction had little effect on Pollman. His continued acts of harassment led to numerous allegations of violation of the injunction, contempt proceedings, additional hearings and even more stringent court orders amending the injunction. A judgment of civil contempt was entered against Pollman in November 1995. Criminal proceedings were also initiated against Pollman. One of these resulted in our decision in State v. Pollman, 1997 SD 36, 562 NW2d 105, an appeal of a stalking conviction arising from a 1995 incident in which Pollman drove his tractor into Melvin Stahl's pickup while they were both traveling on a narrow

gravel road. Pollman's conviction and suspended sentence of eighteen months in the penitentiary were affirmed by this Court.

[¶7.] Additional criminal prosecutions were commenced as a result of Pollman's ongoing activities involving the Stahls and Pollman was again convicted for stalking Melvin Stahl in 2003. He was sentenced to eighteen months in the penitentiary. A few days after his release by the Department of Corrections in 2005, Pollman filed a motion to vacate the Stahls' permanent injunction against him. The motion was denied and Pollman now appeals to this Court.

ISSUE

[¶8.] **Did the trial court abuse its discretion in denying Pollman's motion to vacate the injunction?**

[¶9.] This Court does not disturb a ruling concerning injunctive relief unless it finds an abuse of discretion. Hendrickson v. Wagners, Inc., 1999 SD 74, ¶ 14, 598 NW2d 507, 510 – 11 (quoting Knodel v. Kassel Township, 1998 SD 73, ¶ 6, 581 NW2d 504, 506). The abuse of discretion standard of review extends to rulings concerning the dissolution or continuance of an injunction. *See* Clark v. City of Deadwood, 22 SD 233, 237, 117 NW 131, 133 (1908). "An abuse of discretion can simply be an error of law or it might denote a discretion exercised to an unjustified purpose, against reason and evidence." *Hendrickson, supra.*

[¶10.] Pollman argues that the trial court erred as a matter of law in denying his motion to vacate the injunction against him because the injunction is, in reality, a stalking protection order under SDCL ch 22-19A and such orders are limited to a

three year duration by SDCL 22-19A-11.[1]  Since the injunction was entered in 1995, Pollman argues that the trial court should have vacated it in 2005 for violation of the three year limitation.

[¶11.]      Contrary to Pollman's assertions, the Stahls did not obtain a stalking protection order pursuant to SDCL ch 22-19A.  Rather they obtained an injunction in an action pursuant to SDCL ch 21-8.  It would have been impossible for the Stahls to obtain a stalking protection order in 1995 because the provisions for such orders were not enacted until 1997.  *See* 1997 SDSessL ch 131.  Even when enacted, the stalking provisions included the qualification that "[a]ny proceeding under §§ 22-19A-8 to 22-19A-16, inclusive, is *in addition to* other civil or criminal remedies." SDCL 22-19A-16 (emphasis added).  Thus, it was clearly not the Legislature's intention to displace other remedies, such as injunctive relief, with the provisions for stalking protection orders.

[¶12.]      Few authorities have analyzed whether the enactment of provisions for stalking protection orders precludes or limits the availability of other injunctive relief.  Similar questions have been addressed, however, in the context of domestic abuse statutes.  In Capps v. Capps, 715 SW2d 547 (MoCtApp 1986), a wife filed for divorce and, during the pendency of the action, obtained a series of protection orders under Missouri's Adult Abuse Act.  Her husband appealed arguing that the trial court erred in granting relief under the Adult Abuse Act because his wife could have obtained the relief she wanted in the divorce action.  The Missouri court disagreed

---

1.      SDCL 22-19A-11 provides in pertinent part:  "Any relief granted by the order for protection shall be for a fixed period and may not exceed three years."

holding that the Adult Abuse Act provided a remedy regardless of whether the parties could obtain relief in another action. In reaching its decision, the court specifically noted language in the Adult Abuse Act making its remedies cumulative to other available civil or criminal remedies.

[¶13.] In Thomas v. Thomas, 540 NE2d 745 (OhioCtApp 1988), a wife being sued for divorce sought a civil protection order which was denied because of the preexisting divorce action. The Ohio court reversed holding that "the mere filing of an action for divorce is not a basis on which to deny a civil protection order." *Id*. at 746. In reaching its decision, the court outlined the different purposes of protection orders and divorce provisions and noted language in the protection order statutes making their remedies cumulative to other available civil or criminal remedies.

[¶14.] Domestic abuse statutes such as those considered in *Capps* and *Thomas* are enacted, "to provide an efficient remedy for victims of abuse as an alternative to other available legal remedies such as criminal charges, tort claims, or divorce which victims are sometimes reluctant, unable or unwilling to use." State v. Errington, 310 NW2d 681, 682 (Minn 1981). Much the same is true with regard to stalking statutes such as those under consideration here. They are intended to provide victims of stalking with efficient remedies as alternatives to other available remedies such as an action for injunctive relief. Many stalking victims might be unwilling or even unable to go through the time, effort and expense of obtaining counsel and pursuing a full-blown action for an injunction. Stalking protection orders offer victims an economical and expedient alternative by making standardized petition forms and instructions for their use available in the

various clerks of courts offices. *See* SDCL 22-19A-8. As with domestic abuse statutes, however, the availability of such an alternative does not displace the other civil or criminal remedies available to victims, particularly where the statutory scheme specifically provides that the new remedy is cumulative.

[¶15.] Because the stalking statutes provide remedies that are cumulative to other available remedies and do not replace those remedies, we hold that the enactment of the stalking statutes in 1997 did not turn the Stahls' permanent injunction against Pollman into a stalking protection order governed by the three year limitation period in SDCL 22-19A-11. For that reason, the trial court did not abuse its discretion in denying Pollman's motion to vacate the Stahls' injunction for violation of the three year period.

[¶16.] Affirmed.

[¶17.] GILBERTSON, Chief Justice, SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.