#26662-a-SLZ

**2013 S.D. 85**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TERRI TRUMM,                                   Petitioner and Appellee,

    v.

KEVAN CLEAVER,                              Respondent and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CLAY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE STEVEN R. JENSEN
Judge

\* \* \* \*

CRAIG K. THOMPSON
Vermillion, South Dakota                    Attorney for petitioner
                                       and appellee.

KEVIN J. LOFTUS of
Kennedy Pier Knoff Loftus, LLP
Yankton, South Dakota                       Attorneys for respondent
                                       and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 4, 2013

OPINION FILED **12/04/13**

ZINTER, Justice

[¶1.]        Terri Trumm petitioned for a domestic abuse protection order against Kevan Cleaver under SDCL chapter 25-10.  Terri argued that Kevan's conduct amounted to stalking under SDCL 22-19A-1.  She also argued that, by statutory definition, stalking under SDCL 22-19A-1 constituted domestic abuse under SDCL 25-10-1(1) if the stalking involved family or household members.  The circuit court agreed and granted the protection order.  On appeal, Kevan argues that the circuit court misinterpreted SDCL 25-10-1(1) and abused its discretion in granting the order.  We affirm.

*Facts and Procedural History*

[¶2.]        Terri and Kevan are divorcing.  They live in Vermillion, where Terri is the director of the Vermillion School District's alternative school.  On February 11, 2013, a letter appearing to have been written by Terri was mailed to 131 people in Vermillion.  Most of the intended recipients were employed by the Vermillion School District.  Although the letter was intercepted by postal authorities before most of the people received it, the letter was delivered to eleven school district employees.  Terri did not write the letter.

[¶3.]        The letter disclosed embarrassing personal facts about Terri, some of which were misleading or false.  Terri believed that Kevan wrote and mailed the letter.  Based on this belief and other conduct by Kevan, Terri petitioned for a domestic abuse protection order under chapter 25-10.

[¶4.]        At the hearing on the petition, Terri and Kevan gave conflicting testimony.  Terri testified that only Kevan knew of the facts disclosed in the letter.

Terri was convinced that Kevan wrote and mailed the letter because of his exclusive knowledge of those facts, the turmoil in their marriage, and because she deactivated his cellphone the day before the letter was mailed.

[¶5.]     Kevan denied writing and mailing the letter. Kevan conceded that he had told two people about the facts contained in the letter. He testified that he did not know whether either of them wrote and mailed the letter.

[¶6.]     Terri also sought the protection order because of other conduct she considered harassing. Terri testified that, close to the time of the letter, Kevan sent her odd text messages, along with an unexpected Valentine's Day card. She testified that she and Kevan rarely exchanged Valentine's Day cards, and considering the letter and pending divorce, she found the card harassing. Kevan denied any intention to harass Terri. He testified that the card was meant as a nice gesture.

[¶7.]     At the conclusion of the hearing, the circuit court granted a domestic abuse protection order. Kevan appeals.

*Decision*

[¶8.]     Kevan argues that the circuit court misinterpreted SDCL 25-10-1(1), which defines "domestic abuse." Domestic abuse is a prerequisite for the issuance of a protection order under SDCL 25-10-5. Kevan contends that a person must be convicted of the crime of stalking under SDCL 22-19A-1 before stalking can constitute domestic abuse under SDCL 25-10-1(1). To Kevan, without a criminal conviction for stalking, a domestic abuse protection order based on stalking may not

be granted. Statutory interpretation is a question of law reviewed de novo. *In re Estate of Hamilton*, 2012 S.D. 34, ¶ 7, 814 N.W.2d 141, 143 (citation omitted).

[¶9.] A circuit court may grant a domestic abuse protection order if it "finds by a preponderance of the evidence that domestic abuse has taken place[.]" SDCL 25-10-5. Domestic abuse, as relevant here, is defined as "[a]ny violation of . . . chapter 22-19A [stalking][1] . . . if the underlying criminal act is committed between family or household members[.]" SDCL 25-10-1(1).

[¶10.] Language requiring a criminal "conviction" is not used in SDCL 25-10-1(1). That is significant because related statutes in chapter 25-10 addressing protection from domestic abuse require a criminal conviction. *See* SDCL 25-10-5.3 ("If any person is *convicted of a crime* involving domestic abuse . . . ." (emphasis added)); SDCL 25-10-17.1 ("In addition to any other penalty, assessment, or fine provided by law, the court shall order any person *convicted of a crime* involving domestic violence or domestic abuse to remit costs in the amount of twenty-five dollars to the clerk of courts." (emphasis added)); SDCL 25-10-25 ("The court may order that any defendant *convicted of a crime* involving domestic abuse be prohibited from contact with the victim . . . ." (emphasis added)). Thus, the Legislature required the conviction of a crime in many sections of chapter 25-10, but it excluded that requirement from SDCL 25-10-1(1). This guides us in construing

---

1. Stalking is defined, in part, as the willful, malicious, and repeated harassment of another person. SDCL 22-19A-1(1). Harassment is "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose." SDCL 22-19A-4. A "course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." SDCL 22-19A-5.

SDCL 25-10-1(1) "[s]ince statutes must be construed according to their intent, [and] the intent must be determined from the statute as a whole, as well as enactments relating to the same subject." *In re Estate of Hamilton*, 2012 S.D. 34, ¶ 7, 814 N.W.2d at 143 (quoting *Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611).

[¶11.] We are also guided by the fact that, unlike the related statutes cited above, SDCL 25-10-1(1) requires a "violation" of SDCL 22-19A-1 rather than a "conviction" under the statute. "[E]very word of a statute must be presumed to have been used for a purpose, [and] . . . every word excluded from a statute must be presumed to have been excluded for a purpose." *Wheeler v. Farmers Mut. Ins. Co.*, 2012 S.D. 83, ¶ 21, 824 N.W.2d 102, 109 (quoting 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.06, 181-92 (6th ed. 2000)).

[¶12.] Kevan's reliance on the phrase "criminal act" overlooks the context in which that phrase is used. In 2005, the Legislature added the second sentence of SDCL 25-10-1(1). As is relevant here, that sentence defines domestic abuse as "[a]*ny violation* of . . . chapter 22-19A [stalking] . . . if the underlying criminal act is *committed* between family or household members[.]" *See* 2005 S.D. Sess. Laws ch. 135, § 1 (emphasis added) (adding the second sentence to SDCL 25-10-1(1)). Thus, a protection order may be granted if "any violation" of SDCL 22-19A-1 occurs as long as the underlying criminal act of stalking is "committed" between family or household members. *See* SDCL 25-10-1(1). We acknowledge that the phrase "criminal act" is also in the statute. But if a violation of SDCL 22-19A-1 is

committed between family or household members, it is a "criminal act" whether or not the State elects to prosecute the case as a criminal matter.

[¶13.] We finally note that Kevan's interpretation contravenes the Legislature's purpose in authorizing domestic abuse protection orders. "Domestic abuse statutes . . . are enacted, 'to provide an efficient remedy for victims of abuse as an alternative to other available legal remedies such as criminal charges, tort claims, or divorce which victims are sometimes reluctant, unable or unwilling to use.'" *Stahl v. Pollman*, 2006 S.D. 51, ¶ 14, 716 N.W.2d 794, 797 (quoting *State v. Errington*, 310 N.W.2d 681, 682 (Minn. 1981)). Protection-order statutes provide victims with an efficient, alternative remedy to criminal prosecutions. They allow victims to obtain protection without having to meet the higher beyond-a-reasonable-doubt standard of proof and without having to rely on the State to elect to prosecute a criminal case. Although Kevan contends that Terri has an efficient, alternative remedy in SDCL chapter 22-19A—which authorizes a stalking protection order— "the availability of such an alternative does not displace the other civil or criminal remedies available to victims[.]" *Id.*

[¶14.] We conclude that the circuit court properly interpreted SDCL 25-10-1(1). Terri's civil remedy under chapter 25-10 did not require a criminal conviction for stalking under SDCL 22-19A-1.

[¶15.] Kevan also challenges the grant of the protection order. Kevan first denies that he wrote the letter. Alternatively, he argues that, even if the circuit court's findings of fact are supported, the court abused its discretion in granting the

protection order. We affirm the court's findings regarding the letter.[2] We also reject Kevan's abuse of discretion argument because it is based on the same incorrect interpretation of SDCL 25-10-1(1) that we discussed above.

[¶16.]     Terri moves for appellate attorney's fees. "Attorney fees are allowable in domestic relation cases, 'consider[ing] the property owned by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case.'" *Wiedenfeld v. Wiedenfeld*, 2009 S.D. 90, ¶ 9, 774 N.W.2d 288, 292 (alteration in original) (quoting *Barnes v. Matzner*, 2003 S.D. 42, ¶ 24, 661 N.W.2d 372, 379). "We also examine the fee request from the perspective of whether the party's appellate arguments carried any merit." *Roth v. Haag*, 2013 S.D. 48, ¶ 21, 834 N.W.2d 337, 342 (quoting *Hogen v. Pifer*, 2008 S.D. 96, ¶ 16, 757 N.W.2d 160, 165) (internal quotation marks omitted). Kevan unreasonably required Terri to defend against his meritless appeal. We award Terri her appellate attorney's fees.

---

2.     Kevan offers no record evidence supporting his denial. The circuit court found that Kevan was one of three people who knew the details written in the letter, and the other two knew only because of Kevan. The court also found that, unlike Kevan, the other two people had no significant motive to write and mail the letter. Therefore, circumstantial evidence supported the court's finding that Kevan wrote and mailed the letter. The court did not clearly err in making this finding. *See Shroyer v. Fanning*, 2010 S.D. 22, ¶ 6, 780 N.W.2d 467, 469 ("[T]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence." (citation omitted)); *Zarecky v. Thompson*, 2001 S.D. 121, ¶ 11, 634 N.W.2d 311, 315 (explaining that when "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous" (citation omitted)).

[¶17.]        GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.