#29649-MES
**2022 S.D. 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

In the Matter of the CERTIFICATION OF A QUESTION OF LAW FROM THE
UNITED STATES DISTRICT COURT, DISTRICT OF SOUTH DAKOTA,
SOUTHERN DIVISION, Pursuant to the Provisions of SDCL 15-24A-1, and
Concerning Federal Action Civ. 4:21-cv-04034-LLP, Titled as Follows:

* * * *

BARBARA HERMANEK-PECK,
in her capacity as
Personal Representative of the
Estate of Richard Hermanek,                          Plaintiff,

        v.

RICHARD SPRY and
SUSAN SPRY,                                          Defendant.

* * * *

ORIGINAL PROCEEDING

* * * *

JEFFREY L. BRATKIEWICZ
KATHRYN J. HOSKINS of
Bangs, McCullen, Butler,
    Foye & Simmons, LLP
Sioux Falls, South Dakota

SARAH BARON HOUY of
Bangs, McCullen, Butler,
    Foye & Simmons, LLP
Rapid City, South Dakota

                                        Attorneys for defendants.

* * * *

                                        ARGUED
                                        JANUARY 11, 2022
                                        OPINION FILED **10/12/22**

****

REECE M. ALMOND
ANTHONY M. HOHN
ALAYNA A. HOLMSTOM of
Davenport, Evans, Hurwitz
   & Smith, LLP
Sioux Falls, South Dakota                            Attorneys for plaintiff.

#29649

SALTER, Justice

[¶1.]     In this case, we consider three certified questions from the United

States District Court for the District of South Dakota,[1] all relating to rights and

remedies available to the estate of a vulnerable adult for conduct alleged to have

been committed during the vulnerable adult's life.  In essence, the questions ask

whether SDCL chapter 21-65 creates a private right of action that survives a

vulnerable adult's death and whether a criminal conviction for theft by exploitation

is required for a cause of action under SDCL 22-46-13.  We answer the questions by

holding that the right to commence an action under chapter 21-65 does not survive

the death of the vulnerable adult, though the ability to seek relief in a separate

action when there has been financial exploitation may still be available after death.

We further conclude that a predicate theft conviction is not required to maintain an

action authorized under SDCL 22-46-13.

## Background

[¶2.]     Richard Hermanek died intestate on March 14, 2019, at the age of 89.

A probate proceeding, captioned *In the Matter of the Estate of Richard Hermanek*,

04PR019-13, is currently pending in State court in Bon Homme County.  Barbara

Hermanek-Peck was appointed as the personal representative of Richard

Hermanek's estate.[2]  Richard Spry is Richard Hermanek's nephew, and he and his

---

1.    The Honorable Lawrence L. Piersol, United States District Judge.

2.    The record does not indicate whether or how Barbara and Richard Hermanek
      are related.

-1-

wife, Susan Spry, previously served as Richard Hermanek's attorneys-in-fact pursuant to a durable power of attorney (POA) signed July 25, 2018.

[¶3.]     The POA gave the Sprys the power to, among other things, "give any property belonging to [Richard Hermanek] to any person [his] attorney in fact shall deem proper without consideration." The POA did not, however, explicitly grant the Sprys the authority to self-deal.

[¶4.]     Barbara brought this action against the Sprys on behalf of Richard Hermanek's estate, claiming they had breached their fiduciary duties under the POA and converted Richard Hermanek's property to their own use. The Sprys removed the case to federal court, citing diversity of citizenship as the basis for federal subject matter jurisdiction.[3] *See* 28 U.S.C. § 1332.

[¶5.]     In her detailed complaint, Barbara asserts Richard Hermanek had various assets when he signed the POA, including real estate located in Bon Homme County, vehicles, guns, personal property, and approximately $131,650 in a checking account at Security State Bank in Tyndall. He also received monthly payments for retirement and social security.

[¶6.]     Barbara alleges the Sprys auctioned off some of Richard Hermanek's personal property shortly after he entered an assisted living facility and kept the money. She also alleges the Sprys sold Richard Hermanek's real estate and deposited the proceeds into a newly opened bank account, only to later transfer the money to the Sprys' separate account five days after Richard Hermanek's death.

---

3.     The Sprys reside in Texas. Their notice of removal stated that Barbara "and Richard Hermanek were and/or are residents of the State of South Dakota."

Finally, Barbara claims that the Sprys, between July 2018 and March 2019, wrote numerous checks to themselves and their children which did not benefit Richard Hermanek and instead covered the Sprys' personal expenditures for items such as lodging, gas, and meals.

[¶7.]     Barbara's complaint on behalf of Richard Hermanek's estate alleges four theories of recovery against the Sprys.  Count 1 alleges a breach of fiduciary duty and Count 2 asserts a conversion claim.  Neither is at issue here.

[¶8.]     Counts 3 and 4 of the complaint invoke specific statutory bases for relief.  Count 3 seeks damages under SDCL chapter 21-65, alleging that Richard Hermanek was a victim of vulnerable adult abuse.  And Count 4 claims a civil right of action under SDCL 22-46-13 for exploitation of an elder.

[¶9.]     The Sprys moved to dismiss the complaint, arguing that Barbara failed to state a claim upon which relief could be granted.  *See* Fed. R. Civ. P. 12(b)(6).  As to Count 3, the district court concluded that Barbara's complaint sufficiently alleged Richard Hermanek was a vulnerable adult.  However, the district court noted a paucity of South Dakota decisional law addressing the Sprys' claim that an action alleging abuse of a vulnerable adult does not survive the death of the adult at issue.  Opting not to make an "Erie-educated guess"[4] on this issue of state law, the district

---

4.     Where a federal district court's subject matter jurisdiction is founded upon diversity of citizenship, "the district court applies the substantive law of the forum state." *White v. Lavigne*, 741 F.2d 229, 230 (8th Cir. 1984) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).  If the district court does not certify the question to the state supreme court, as the district court did here, the district court must "predict how the state supreme court would rule if faced with the [same issue][.]" *Blankenship v. USA Truck,*
(continued . . .)

court elected to certify the question to this Court.[5] The district court made a similar determination regarding Count 4 of the complaint, indicating its inclination to certify a different question presented by the Sprys, namely, whether a criminal conviction under SDCL 22-46-3 is required before a plaintiff has a cause of action for theft by exploitation under SDCL 22-46-13. The district court formulated the questions as follows:

> 1. Does South Dakota recognize a private right of action for a violation of SDCL chapter 21-65 after the death of the vulnerable adult?
>
> 2. For a civil claim to be brought under SDCL 22-46-3 and SDCL 22-46-13, must the person against whom the claim is brought have been criminally convicted of theft by exploitation under SDCL 22-46-3?
>
> 3. Can a civil claim be brought for violation of SDCL 22-46-1 and SDCL 22-46-13 with no requirement for a preceding criminal conviction given the "or" between SDCL 22-46-1 and SDCL 22-46-3 in SDCL 22-46-13?

[¶10.]     In her submissions to this Court, Barbara argues that the first and third questions should be answered in the affirmative while the second should be answered in the negative. As to the first question, she argues that SDCL chapter 21-65 creates a private right of action and allows the court to grant *any* relief that the court deems necessary to remedy the financial exploitation of vulnerable adults, without restriction. She also argues that the cause of action survives the death of

---

(. . . continued)

    *Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) (first alteration in original) (quoting *Northland Cas. Co. v. Meeks*, 540 F.3d 869, 874 (8th Cir. 2008)).

5.    We are specifically authorized to "answer questions of law certified . . . by the Supreme Court of the United States, a court of appeals of the United States, or a United States district court[.]" SDCL 15-24A-1.

the vulnerable adult because nothing in chapter 21-65 expressly prohibits the personal representative of a vulnerable adult's estate from seeking statutory relief. To conclude otherwise and condition chapter 21-65 relief upon a vulnerable adult being alive would, in Barbara's view, effectively grant immunity to abusers whose victims pass away.

[¶11.] By contrast, the Sprys express the view that SDCL chapter 21-65 does not create a private right of action beyond the ability to seek an order of protection during the life of a vulnerable adult, citing the use of present-tense verbs within the text of certain chapter 21-65 statutes. The Sprys also note that a personal representative is not listed among the enumerated "substitute petitioner[s]" authorized to seek relief on behalf of a vulnerable adult under SDCL 21-65-1(14). In these instances involving substitute petitioners, the Sprys emphasize certain statutory rights that a vulnerable adult "retains" and argue by inference that only a living vulnerable victim could invoke these rights. *See* SDCL 21-65-4 ("If a substitute petitioner files . . . on behalf of a vulnerable adult, the vulnerable adult retains the right to all of the following . . . .").

[¶12.] Regarding the second certified question, Barbara asserts that the plain language of SDCL 22-46-13 authorizes a civil action for exploitation of an elder without regard to the existence of a corresponding predicate criminal conviction.[6] Though the statute includes a reference to a court's "find[ing] that an elder or adult with a disability has been exploited as defined in § 22-46-1 or 22-46-3[,]" Barbara argues the text of the statute does not use words like "conviction," "violation," or

---

6. The Sprys have not been charged with exploiting Richard Hermanek.

"prosecution." *See* SDCL 22-46-13. In this regard, she draws a comparison to our statutes authorizing domestic abuse protection orders, which we have held may be issued without a predicate criminal conviction. *See Trumm v. Cleaver*, 2013 S.D. 85, 841 N.W.2d 22 (holding that the phrase in SDCL 25-10-1(1) defining "domestic abuse" as any "violation of" the criminal stalking provisions of chapter 22-19A does not require a stalking conviction as a predicate to a domestic abuse protection order).

[¶13.] The Sprys' contrary view concerning the second certified question relies principally upon a report and recommendation issued by a federal magistrate judge who concluded that SDCL 22-46-13 requires a criminal conviction as a predicate to a civil claim for theft by exploitation. *See Wetch v. Crum & Forster Com. Ins.*, No. 5:17-CV-05033-JLV, 2018 WL 10812341, at *20 (D.S.D. Dec. 6, 2018) (stating that a civil cause of action did not exist under SDCL 22-46-13 in the absence of a conviction under SDCL 22-46-3).

[¶14.] Finally, Barbara urges this Court to answer the third certified question in the affirmative. She maintains that the question is improperly phrased, but in any event, SDCL 22-46-13's reference to SDCL 22-46-1 and SDCL 22-46-3 in its description of a civil action for exploitation does not suggest a prerequisite conviction. In her view, they merely provide alternate statutory definitions for exploitation, only one of which (SDCL 22-46-3) criminalizes theft.

[¶15.] The Sprys propose a different interpretation, claiming that their analysis in question two also applies to the third certified question. They allege that SDCL 22-46-1 defines "exploitation" while SDCL 22-46-3 describes and

criminalizes prohibited conduct. Thus, they allege that a conviction is required under SDCL 22-46-3 to bring a cause of action under SDCL 22-46-13.

## Analysis and Decision

[¶16.] The certified questions before us present issues of statutory construction which are, of course, questions of law. *Zoss v. Schaefers*, 1999 S.D. 105, ¶ 6, 598 N.W.2d 550, 552 (stating that statutory interpretation is a question of law). "Statutory construction is an exercise to determine legislative intent." *In re W. River Elec. Ass'n, Inc.*, 2004 S.D. 11, ¶ 15, 675 N.W.2d 222, 226.

> [W]e adhere to two primary rules of statutory construction. The first rule is that the language expressed in the statute is the paramount consideration. The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction.

*Winslow v. Fall River Cnty.*, 2018 S.D. 25, ¶ 12, 909 N.W.2d 713, 717 (alteration in original) (citation omitted); *see also Matter of Appeal by Implicated Individual*, 2021 S.D. 61, ¶ 28, 966 N.W.2d 578, 586 (noting the "cardinal rule of statutory interpretation" is to "simply read the text and apply it").

***Whether the Legislature created a private right of action under SDCL chapter 21-65 that can be commenced after the death of a vulnerable adult.***

[¶17.] We begin with several statutory definitions that are central to our examination of the procedure that allows relief from vulnerable adult abuse. As is relevant here, a "vulnerable adult" is "a person sixty-five years of age or older who is unable to protect himself or herself from abuse as a result of age or a mental or physical condition . . . ." SDCL 21-65-1(15). "Vulnerable adult abuse" can occur in one of four ways: 1) physical abuse; 2) emotional or psychological abuse; 3) neglect;

or 4) financial exploitation. SDCL 21-65-1(4). "Financial exploitation," for purposes of chapter 21-65, occurs when "a person who stands in position of trust or confidence [to the vulnerable adult]," *see* SDCL 21-65-1(7), wrongfully takes or exercises "control over property of an elder or adult with a disability with intent to defraud the elder or adult with a disability[,]" *see* SDCL 22-46-1(5).

[¶18.]　　　The provisions of SDCL chapter 21-65 allow an individual to "seek relief from vulnerable adult abuse," including financial exploitation, through a petition filed either by the vulnerable adult or by a "substitute petitioner." SDCL 21-65-2. A "substitute petitioner" is defined as "a family or household member, guardian, conservator, attorney in fact, or guardian ad litem for a vulnerable adult, or other interested person who files a petition pursuant to this chapter[.]" SDCL 21-65-1(14).

[¶19.]　　　As it relates to financial exploitation, the text of SDCL 21-65-12 provides a court with broad authority when fashioning relief:

> If the court finds that the vulnerable adult has been the victim of financial exploitation, the court may order the relief the court considers necessary to prevent or remedy the financial exploitation, including any of the following:
>
> (1) Directing the respondent to refrain from exercising control over the funds, benefits, property, resources, belongings, or assets of the vulnerable adult;
>
> (2) Requiring the respondent to return custody or control of the funds, benefits, property, resources, belongings, or assets to the vulnerable adult;
>
> (3) Requiring the respondent to follow the instructions of the guardian, conservator, or attorney-in-fact of the vulnerable adult; and

       (4) Prohibiting the respondent from transferring the funds, benefits, property, resources, belongings, or assets of the vulnerable adult to any person other than the vulnerable adult.

*See also* SDCL 21-65-15 (authorizing the court to order the respondent to pay the vulnerable adult's or substitute petitioner's attorney fees). Without question, the provisions of chapter 21-65 create a private right of action for vulnerable adults to seek relief from, among other things, financial exploitation.

[¶20.]      The district court appears to have read the operative statutes of chapter 21-65 as we do and, in its first certified question, poses a more specific inquiry—whether a private right of action for relief from vulnerable adult abuse can be commenced after the death of the vulnerable adult. Of course, a deceased vulnerable adult can no longer be subject, in a corporeal sense, to the first three types of vulnerable adult abuse found in SDCL 21-65-1(4), which include physical abuse, emotional and psychological abuse, and neglect. Consequently, the relief afforded under SDCL 21-65-11 to address the immediate safety and welfare concerns would no longer be necessary after a vulnerable adult's death.

[¶21.]      The same cannot be so easily said in cases where a vulnerable adult was the victim of the fourth type of vulnerable adult abuse listed in SDCL 21-65-1(4)—financial exploitation—because the impact of financial exploitation may well extend beyond a vulnerable adult's life. The critical legal issue prompted by the certified question in this regard is whether the personal representative of a deceased vulnerable adult's estate may seek remedial relief to recover assets or to preserve and protect assets by commencing an action under SDCL chapter 21-65.

[¶22.] A review of SDCL chapter 21-65 in its totality suggests that the Legislature did not intend for this chapter to create a private right of action that can be commenced by a personal representative after the death of the vulnerable adult. Personal representatives are not included among SDCL 21-65-1(14)'s list of specific people who can serve as substitute petitioners—i.e., "a family or household member, guardian, conservator, attorney in fact, or guardian ad litem for a vulnerable adult[.]" And although SDCL 21-65-1(14) also allows "other interested person[s]" to serve as substitute petitioners, other provisions in chapter 21-65 do not support the contention that this catchall designation includes personal representatives, like Barbara, who are serving *after* a vulnerable adult has passed away and no longer owns property.

[¶23.] Notably, the temporal limits for other fiduciaries specifically authorized to serve as a substitute petitioner under SDCL 21-65-1(14) are different. Guardians, conservators, and attorneys-in-fact serve *before* the death of the vulnerable adult they are assisting. *See* SDCL 29A-5-507 ("A guardianship or conservatorship of a protected person shall terminate upon the death of the protected person . . . ."); SDCL 59-12-9 ("A power of attorney terminates when . . . [t]he principal dies . . . .").[7]

[¶24.] Further, the nature of the expedited proceedings described by the Legislature in chapter 21-65 makes clear that this cause of action cannot be

---

7. The fact a person is designated as a *prospective* personal representative for a vulnerable adult's estate does not mean the person could not act as a substitute petitioner for a living vulnerable adult under the theory the would-be personal representative was an "other interested person." But here, that situation is not presented.

commenced after the death of the vulnerable adult. For instance, SDCL 21-65-4 lists certain participatory rights that a vulnerable adult "retains" in cases prosecuted by a substitute petitioner, including the right to counsel, the right to access personal records, the right to "file objections to the protection order[,]" the right to request a hearing, and the right "[t]o present evidence and cross-examine witnesses at the hearing." The fact that the Legislature explicitly contemplated a vulnerable adult's direct participation in a proceeding brought under chapter 21-65 strongly suggests that the remedies were created for vulnerable adults who are alive. *See also* SDCL 21-65-7 (requiring the court to "exercise its discretion [at the hearing] in a manner that protects the vulnerable adult from traumatic confrontation with the respondent").

[¶25.] In addition, the relief authorized upon a finding of financial exploitation is oriented toward the property of a living vulnerable adult. The provisions of SDCL 21-65-12(1), (2), and (4) allow a circuit court to order the respondent to refrain from exercising control over a vulnerable adult's property or from transferring such property to any person "other than the vulnerable adult" and to return a vulnerable adult's property "to the vulnerable adult." The specific text of SDCL 21-65-12(3) also authorizes a circuit court to order the respondent to "follow the instructions of the guardian, conservator, or attorney-in-fact of the vulnerable adult[,]" but, as indicated above, the authority of these fiduciaries generally expires upon the death of the vulnerable adult.

[¶26.] Although an action cannot be commenced on behalf of a deceased vulnerable adult under SDCL chapter 21-65, this does not foreclose relief to address

the financial exploitation that occurred during the vulnerable adult's lifetime.[8]

When the Legislature enacted SDCL chapter 21-65 in 2016 as a means to obtain

prompt, expeditious relief for vulnerable adults, it also enacted complementary

cross-referencing provisions in SDCL chapter 22-46, which broaden protections

against financial exploitation for elderly or vulnerable adults.  These sections reflect

an apparent and concerted expression of legislative intent to afford remedies both

before and after the death of a vulnerable adult to address financial exploitation.

*See* SDCL 22-46-18 ("The remedies provided in §§ 22-46-13 to 22-46-17, inclusive,

are in addition to and cumulative with other legal and administrative remedies

available to an elder or adult with a disability.").

[¶27.]     The additional provisions enacted in SDCL chapter 22-46, although

located in what is often described as our criminal code, allow for a more traditional

civil cause of action.  As explained further below, this chapter contains a statute

that provides for a civil action to recover damages for exploitation of an "elder"

brought by, among other potential plaintiffs, a "personal representative."  SDCL 22-

46-13.  For "violations under . . . 22-46-13[,]" a "court may authorize remedies

provided in *§ 21-65-12*[.]"  SDCL 22-46-17 (emphasis added).  The fact that personal

representatives are specifically listed in this statute, along with guardians and

conservators, as persons who may bring a cause of action under SDCL 22-46-13,

supports our conclusion that the statutory schemes in chapters 21-65 and 22-46

---

8.     Given the limited scope of the district court's certified questions, we leave for
       another day any consideration relating to the impact, if any, of a vulnerable
       adult's death upon relief previously ordered in a SDCL chapter 21-65
       proceeding commenced while the vulnerable adult was still alive.

were intended to work in tandem to cover all scenarios relating to financial exploitation of vulnerable adults.

[¶28.] We conclude, therefore, that chapter 21-65 creates a private right of action. However, the private right of action may not be commenced under this chapter after the death of a vulnerable adult, and we answer the first certified question in the negative.

***Whether a criminal conviction under SDCL 22-46-3 is a predicate to a civil claim brought under SDCL 22-46-13.***

[¶29.] The same rules of statutory interpretation set out above apply to our examination of the text contained in SDCL 22-46-13 and SDCL 22-46-3, leading us to conclude that both statutes are clear and unambiguous. The relevant portion of SDCL 22-46-13 provides:

> A court may find that an elder . . . has been exploited as defined in § 22-46-1 or 22-46-3. If a court finds exploitation occurred, the elder . . . has a cause of action against the perpetrator and may recover actual and punitive damages for the exploitation.

[¶30.] We note at the outset that the text of SDCL 22-46-13 does not expressly condition a court's finding of exploitation upon a conviction. Though it may not be dispositive of the answer to the certified question, it is at least telling that the Legislature elected to not include an express requirement of a criminal conviction as a predicate to civil liability. *Cf.* SDCL 22-13-18 (authorizing a circuit court to order injunctive relief or "damages, including attorney fees, or other

appropriate relief against any person who is repeatedly found guilty" of committing certain unlawful picketing offenses).[9]

[¶31.] Beyond this, neither of the two statutes designated in SDCL 22-46-13—SDCL 22-46-1 and SDCL 22-46-3—contain an embedded conviction requirement. The provisions of SDCL 22-46-1(5) simply define "[e]xploitation" as "the wrongful taking or exercising of control over property of an elder with intent to defraud the elder or adult with a disability[.]" The text of SDCL 22-46-3 sets out the criminal offense of theft by exploitation, describing exploitation in narrower terms by requiring the state to prove the theft was committed by a person who "assumed [a] duty . . . to provide for the support of an elder" and had been entrusted with the elder's property.[10]

---

9. In a footnote included in her brief, Barbara suggests that if a defendant in a civil action alleging exploitation has, in fact, been convicted of the same conduct, there is no need for a court to find the same facts. The argument lacks citation to supporting authority and perhaps for good reason. *See* W. E. Shipley, Annotation, *Conviction or Acquittal As Evidence of the Facts On Which It Was Based In Civil Action*, 18 A.L.R.2d 1287 § 1(b) (1951) (stating that traditionally "a judgment in a criminal case, whether of conviction or acquittal, was incompetent when offered in a civil case to prove the facts upon which it was based"). Though the more current trend is to analyze the impact of criminal judgments individually, *see id.*, our cases reflect the general rule. *See, e.g.*, *Berlin v. Berens*, 76 S.D. 429, 436, 80 N.W.2d 79, 83 (1956) ("Where a plea of guilty is admitted as substantive evidence in civil litigation involving the same occurrence it is not conclusive and may be explained.").

10. In *Trumm*, this Court emphasized the fact that the word "conviction" was not found within SDCL 25-10-1(1)'s definition of domestic abuse, but "conviction" was used in other related statutes throughout SDCL chapter 25-10. 2013 S.D. 85, ¶ 10, 841 N.W.2d at 24–25. We noted this significance, stating that "the Legislature required the conviction of a crime in many sections of chapter 25-10, but it excluded that requirement from SDCL 25-10-1(1)." *Id.* ¶ 10, 841 N.W.2d at 25.

[¶32.]     In either event, these two statutes simply define and describe alternative types of exploitation.  They do not support the claim that the existence of exploitation referenced in SDCL 22-46-13 necessarily means a conviction.[11]

[¶33.]     The Sprys support their argument to the contrary, as indicated above, with the report and recommendation in *Wetch*, which in turn, relied principally upon our 1983 decision in *K & E Land and Cattle, Inc. v. Mayer*, 330 N.W.2d 529 (S.D. 1983).[12]  In our view, however, this reliance was misplaced.

[¶34.]     The statute at issue in *K & E* was the now-repealed SDCL 22-34-2, which provided that "[a]ny person who violates § 22-34-1 [criminalizing damage to property], *in addition to the punishment prescribed therefor*, is liable in treble damages for the injury done, to be recovered in a civil action by the owner of the property or public officer having charge thereof."  (Emphasis added).  The question presented was whether an award of treble damages, under SDCL 22-34-2, and punitive damages, under SDCL 21-3-2, created "a duplication of penal damages."  *K & E*, 330 N.W.2d at 531.  We held that it did but diverted from a direct analytical course to note a "[t]hreshold problem . . . with the application of SDCL 22-34-1 and

---

11.    Neither the district court's certified questions nor the parties' submissions address whether the finding of exploitation must be made by a court, as the statute suggests, or a jury, as would ordinarily be authorized for "cases at law."  *See* S.D. Const. art. VI, § 6 ("The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy . . . .").

12.    In addition, the magistrate judge in *Wetch* relied upon a District of South Dakota decision in *Christensen v. Quinn*, 45 F. Supp. 3d 1043 (D.S.D. 2014).  However, *Quinn* also relied heavily on *K & E*, and so, whatever persuasive value *Wetch* and *Quinn* may possess depends upon whether *K & E* assists with our analysis here.

SDCL 22-34-2[.]" *Id.* at 532. Because the defendant had not been prosecuted and convicted of violating SDCL 22-34-1, he was not "*also* liable . . . in a civil action." *Id.* (emphasis added).

[¶35.]     Though the *result* in *K & E* may bear upon a more general discussion of whether a criminal conviction must precede a civil action based on the same conduct, the *rules* governing our analysis of statutory text lead us to conclude that the holding in *K & E* has little or no utility here. Central to our conclusion in *K & E* was the fact that SDCL 22-34-2 provided for aggregated criminal and civil punishment—i.e., an action for civil damages was cognizable "in addition to the punishment prescribed" by the underlying criminal statute, SDCL 22-34-1.

[¶36.]     The text of SDCL 22-46-13 is much different. The statute does not restrict civil recovery to treble damages, and more to the point, it does not contemplate aggregated remedies after a "violation" of the criminal statute.[13] Instead, SDCL 22-46-13 authorizes a generic civil "cause of action" in which the plaintiff "may recover actual and punitive damages" upon a court's finding of exploitation. Unlike the text of SDCL 22-34-2, as we interpreted it in *K & E*, SDCL 22-46-13 contains no textual indication of the Legislature's intent to combine the civil remedy with the criminal punishment.[14]

---

13.     Treble damages may not be categorically punitive in nature, and we make no determination in this regard. *See Webb v. Shull*, 270 P.3d 1266, 1269–71 (Nev. 2012) (discussing punitive and remedial aspects of treble damages). It is sufficient for our analysis here to simply observe that we regarded the treble damages authorized by the former SDCL 22-34-2 as punitive in *K & E*.

14.     Barbara distinguishes *K & E* by equating the "violation" text of the former SDCL 22-34-2 with a conviction. But this argument seems somewhat at odds

(continued . . .)

[¶37.]    However, even if a conviction is not required prior to a court's finding of exploitation, we still must determine if SDCL 22-46-13 requires that a court's finding of exploitation precedes the plaintiff's civil cause of action, given its second sentence which states, "[i]f a court finds exploitation occurred, the elder or adult with a disability has a cause of action against the perpetrator . . . ." On this question, we conclude that the existence of a cause of action under SDCL 22-46-13 does not depend upon a prior finding, either civilly or criminally, of exploitation.[15] To hold otherwise would create a circular paradigm in which a plaintiff would have to prove liability before acquiring a cause of action. *See Trumm*, 2013 S.D. 85, ¶ 13, 841 N.W.2d at 25 (noting that requiring a stalking conviction as a predicate to the issuance of a protection order would contravene "the Legislature's purpose in authorizing domestic abuse protection orders" to allow victims relief "without

---

(. . . continued)

> with her reliance on *Trumm* where we held that the textual term referring to "any violation" of the criminal stalking chapter did not mean a stalking conviction based upon reasons particular to the relevant statutory framework of SDCL chapter 25-10. 2013 S.D. 85, ¶ 12, 841 N.W.2d at 25. More than anything, however, the efforts to reconcile *K & E*, *Trumm*, and this case highlight the difficulty of forging comparative arguments from holdings involving dissimilar statutory text.

15.    Though the finding of exploitation does not have to precede a cause of action for damages, we can envision circumstances in which it might. For instance, it is possible that a court, during the course of determining a petition seeking relief from vulnerable adult abuse under the provisions of chapter 21-65, may make a finding of exploitation before any effort to pursue an action under SDCL 22-46-13. *See* SDCL 21-65-1(7) (defining financial exploitation as "exploitation as defined in subdivision 22-46-1(5) when committed by a person who stands in a position of trust or confidence").

having to meet the higher beyond-a-reasonable-doubt standard of proof").[16]  Though

"our standard for relative absurdity should be high[,]" the Legislature surely did not

intend to create a cause of action only to condition its existence on antecedent

liability.  *See Implicated Individual*, 2021 S.D. 61, ¶ 25, 966 N.W.2d at 585 (citation

omitted); *see also People ex rel. J.L.*, 2011 S.D. 36, ¶ 9 n.2, 800 N.W.2d 720, 723 n.2

(listing cases finding the application of statutes to be absurd).

[¶38.]      We answer the second certified question in the negative.

### Whether the "or" between SDCL 22-46-1 and SDCL 22-46-3 suggests that a preceding criminal conviction is not required to commence a civil claim under SDCL 22-46-13.

[¶39.]      Based upon the analysis relating to the second certified question, a

civil cause of action under SDCL 22-46-13 is not predicated upon a criminal

conviction of exploitation under either of the alternative theories described in SDCL

22-46-1 or SDCL 22-46-3.  As indicated above, only SDCL 22-46-3—not SDCL 22-

46-1(5)—states a criminal offense.  In fact, the definition of exploitation contained

in SDCL 22-46-1(5) does not appear to be used again in chapter 22-46.  Therefore,

the fact that SDCL 22-46-13 allows relief in a civil cause of action upon a finding of

abuse under either SDCL 22-46-1 (which does not include the additional elements

required for a criminal conviction) "or" SDCL 22-46-3 further supports our

16.      Barbara cites our decision in *State v. Hauge*, 2019 S.D. 45, 932 N.W.2d 165 as
         support for her argument that preventing the exploitation of vulnerable
         adults has a strong basis in public policy.  While we agree with the
         proposition generally, we do not believe the passage from *Hauge* upon which
         she relies directly supports her view.  Rather, our statement in *Hauge*
         declaring criminal conduct to be "insidious [where] it involves the
         manipulation of disabled or elderly adults" was made in the context of our
         Eighth Amendment analysis to determine whether the defendant's sentence
         was grossly disproportionate.  2019 S.D. 45, ¶ 35, 932 N.W.2d at 175.

conclusion that a preceding criminal conviction is not required to pursue relief under this statute. We therefore answer the third certified question in the affirmative.

**Conclusion**

[¶40.]     The statutes presented in the first certified question are clear and unambiguous. A vulnerable adult or substitute petitioner has a private right of action for the financial exploitation of a vulnerable adult. However, the private right of action cannot be commenced under SDCL chapter 21-65 after the vulnerable adult's death, though financial exploitation remains actionable after a person's death under SDCL 22-46-13. This latter statute and the provisions cited in its text also contain plain and unambiguous language, none of which require a criminal conviction as a predicate to a civil cause of action for exploitation. For these reasons, we answer the first two certified questions in the negative and the third in the affirmative.

[¶41.]     JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.