#23551-rev&rem-PER CURIAM
**2006 SD 32**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

PATRICIA MARIE JUDSTRA,                    Plaintiff and Appellee,


v.

MICHAEL ROBERT DONELAN,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE KATHLEEN K. CALDWELL

Judge

* * * *

PATRICIA MARIE JUDSTRA
Humboldt, South Dakota                    Pro se plaintiff and appellee.

CHAD SWENSON of
Swenson Law Firm                          Attorney for defendant
Sioux Falls, South Dakota                 and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 9, 2006

OPINION FILED 3/29/06

#23551

PER CURIAM

[¶1.] Michael Donelan appeals from the entry of a stalking protection order restraining him from contact with Patricia Judstra. We reverse and remand for the entry of findings of fact and conclusions of law.

## FACTS

[¶2.] Donelan lives near the city of Montrose and Judstra resides in the nearby city of Humboldt. Donelan is a self-employed contractor and was hired by Judstra to do some work on her residence. According to Donelan, a dispute arose between the two over payment for the work performed, and Donelan continued to make contact with Judstra about paying the balance owed. In October 2004 Judstra filed a petition for a stalking protection order against Donelan. A hearing on the petition was held on November 23, 2004, and the trial court denied issuance of a protection order. However, during her departure from the courthouse after the hearing, Judstra had an encounter with Donelan that caused her to file a new petition. A hearing on the second petition was held on December 15, 2004. At the close of the hearing, the trial court entered an order finding that stalking had taken place. The court restrained Donelan from following or harassing Judstra for a period of three years. The order further restrained Donelan from coming within 1000 feet of Judstra, her residence, or her place of work. The order finally restrained Donelan from contact of any kind with Judstra, including phone calls, e-mails, or third party contact.

## ISSUE

[¶3.] **Did the trial court err in granting a protection order?**

#23551

[¶4.]    The standards applicable in reviewing protection orders were recently set forth in Goeden v. Daum, 2003 SD 91, ¶ 5, 668 NW2d 108, 110:

> The grant or denial of a protection order is reviewed under the same standard used to review the grant or denial of an injunction. We must first determine if the trial court's findings of fact were clearly erroneous.
>
>> In applying the clearly erroneous standard, our function is not to decide factual issues de novo. The question is not whether this court would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. This court is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence. Doubts about whether the evidence supports the court's findings of fact are to be resolved in favor of the successful party's 'version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action.'
>
> If the findings of fact are not clearly erroneous, this Court must then determine whether the trial court abused its discretion in granting or denying the protection order. (citations omitted).

[¶5.]    South Dakota law allows issuance of a protection order on a finding that "stalking" has taken place. *See* SDCL 22-19A-11.  Donelan argues that the trial court abused its discretion in granting a protection order because the evidence did not support a finding that stalking occurred.  The evidence supporting stalking is found in Judstra's affidavit.  Judstra alleged that after the first protection order hearing, she and her boyfriend waited in the courtroom for a few minutes for Donelan to leave and that they then took the elevator to the courthouse lobby.  Judstra further alleged that at that point Donelan approached her in the lobby,

-2-

"sneered" at her and then left through one set of doors as she and her boyfriend went out through another. Judstra asserted that Donelan then turned around and followed her as she made her way outside and that she turned around and went back into the courthouse to find the judge. Unable to find the judge, Judstra made contact with courthouse security who escorted her to her vehicle in the parking lot where, she alleged, Donelan was still parked.

[¶6.] Judstra did not testify during the second protection order hearing. Instead, she relied on the foregoing allegations in her affidavit and the testimony of her boyfriend. Donelan countered with his own testimony, testimony from two friends, and testimony from his girlfriend. All of Donelan's witnesses essentially testified that Donelan had no contact with Judstra after the first protection order hearing. All four witnesses testified that after the first hearing they departed the courtroom and went down to the courthouse lobby where they visited for a few minutes. During that time, they saw Judstra but denied any contact with her as she left the building. Donelan only admitted going out the wrong set of doors to reach his vehicle and that he then had to turn around and follow Judstra out of the building to get to his parking place. However, Donelan and his witnesses repeatedly denied any contact with Judstra.

[¶7.] The trial court entered no formal findings of fact on these divergent stories. Moreover, it is obvious from the record of the second protection order hearing that part of the court's basis for issuing its order was evidence presented during the first hearing. The court began the second hearing with the following statement:

THE COURT: You can have a seat. Okay. Now, I just heard this case not too long ago, and I dismissed the Protection Order, and I told Mr. Donelan, you stay away from her, don't go near her, don't go near her, don't go near her. Then I heard from my clerk that Mr. Donelan or I guess Ms. Judstra had to [be] escorted out of the courthouse by security because you wouldn't leave her alone. Now, tell me where I'm wrong here. Tell me where I'm wrong.

Ultimately, the trial court issued the order at the close of the second hearing explaining:

THE COURT: All right. Thank you. Well, I spent, I would guess, at least an hour if not two hours hearing the evidence in this case before, and Mr. Donelan was very persuasive that it was just about a money deal, and that there was nothing going on, and he would just stay away from her, and oh, his business was going to be hurt and this whole big song and dance that I got from Mr. Donelan, and so I dismissed it, and I'm making a finding that first of all, I warned him. I said you stay away from her, you do not go near her, you leave her alone, and I bet I said it ten times if I said it once, and she waited in the courtroom to give him a chance to leave the building, then she goes down and he specifically walks up to her and sneers at her and makes a face. That violated the Order that I gave him to get out of the courthouse, before he was even out of the courthouse, and I am granting a protection order for Ms. Judstra for three years against Mr. Donelan for stalking and for not even obeying my Order long enough to get out of the courthouse, and so there's no contact whatsoever, and if it wrecks his business, you know what, I don't care because I gave him a break. He couldn't even get out of this courthouse without offending her to the point where she needed security, and it was up to him to make sure that she didn't feel scared and didn't need security. All he had to do was leave the courthouse. Not hang around inside the courthouse because she was waiting for him to clear the place, and I find that offensive, so she gets the protection order, he stays away from her, and this time if he walks up and sneers to her, he goes to jail, and that's how protection orders work. I gave him a break. I listened to him. I bought in to what he was saying, and I don't buy it any more.

Other than also reciting the statutory language defining stalking in the protection order, the foregoing statement contains the only findings that we have in the record to review this dispute.

[¶8.] Given the absence of the record from the first protection order proceeding, the scant record of the second proceeding, and the absence of adequate findings of fact and conclusions of law, much guess-work would be involved in any attempt to review the sufficiency of the evidence in this case: particularly evidence of stalking, which requires a showing of a series of acts that constitute willful, malicious and repeated harassment that serves no legitimate purpose. *See* SDCL 22-19A-1(1); 22-19A-1(3); 22-19A-4; 22-19A-5. Thus, much of what this Court stated in *Goeden*, regarding adequate findings, is also applicable here:

> We cannot meaningfully review the trial court decision without the trial court's reasons for ruling the way it did. The standard of review requires that we first determine whether the findings of fact are clearly erroneous. Without findings of fact, there is no way to determine the basis for the trial court's conclusions that stalking had occurred or whether those findings were clearly erroneous. Secondly, we are to determine whether the trial court abused its discretion in light of those findings in granting the protection order. "An abuse of discretion can simply be an error of law or it might denote a discretion exercised to an unjustified purpose, against reason and evidence."
>
> The trial court's only pronouncement, at the conclusion of the testimony, was a general statement that he found stalking had occurred under SDCL 22-19A. *He did not indicate which version of the evidence he believed. Nor did he indicate how the evidence met the statutory elements of stalking. . . .*
>
> * * *

> In making a decision, the trial court must set forth the basis for its conclusions with sufficient specificity to permit a meaningful review. . . . The rules of civil procedure . . . should not be relaxed to the point of skipping a crucial element of a court trial involving contested facts. Unless waived, the judge must insure that findings of fact and conclusions of law are clearly entered. This may be done orally on the record following the hearing, or with a written memorandum, or by filing formal findings of fact and conclusions of law, or by incorporating them into the protection order itself. . . .
>
> We reverse and remand to allow the trial court to enter findings of fact and conclusions of law.

*Goeden*, 2003 SD 91 at ¶¶ 7-10, 668 NW2d at 110-11 (citations omitted)(emphasis added).

[¶9.]    In this case, the record reflects that the trial court's decision was based on conflicting evidence from both hearings. However, we have no findings from the first hearing, and the findings from the second hearing are inadequate to determine which version of the evidence was believed and how it met the statutory definition. Therefore, as in *Goeden*, we reverse and remand for the entry of findings of fact and conclusions of law. They should include background findings, based upon evidence presented in both hearings, that allegedly justify the issuance of a stalking protection order.

[¶10.]    Reversed and remanded.

[¶11.]    GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.