#26323-r-DG

**2012 S.D. 85**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DORA CASTANO,                                   Petitioner and Appellee,

     v.

RICHARD R. ISHOL,                               Respondent and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE VINCENT A. FOLEY
Judge

* * * *

DORA CASTANO
Brookings, South Dakota                         Pro se petitioner and appellee.

JEROMY J. PANKRATZ
REED T. MAHLKE of
Glover & Helsper, PC
Brookings, South Dakota                         Attorneys for respondent
                                                and appellant.

* * * *

                                                CONSIDERED ON BRIEFS
                                                ON OCTOBER 1, 2012

                                                OPINION FILED **12/05/12**

GILBERTSON, Chief Justice

[¶1.]        Richard Ishol appeals a protection order restricting his contact with his former wife and her daughter for a period of one year.  We reverse.

**Facts**

[¶2.]        Dora Castano came to Brookings, South Dakota in April 2010 and she and Ishol were married that June.  Castano received her visa in April or May of 2011 but her relationship with Ishol began to deteriorate when she did not take a job that he had arranged for her.  Ishol had a final interview with the Department of Homeland Security in June 2011 and signed a document on June 27 withdrawing his support for Castano's permanent residence status.  Ishol testified during the hearing in this matter that, at that point, "they annulled everything, my letter of support dissolved the marriage, everything was dissolved."

[¶3.]        Castano stayed at a domestic violence shelter from August 14 through November 2, 2011.  On November 30, Ishol sent Castano an e-mail offering her a car he wanted to get rid of.  Ishol also mentioned some health issues he had and a car accident that he had been involved in.  Castano replied on December 11, telling Ishol, "No thank you regarding the car."  Castano further instructed, "PLEASE DO NOT CONTACT ME AGAIN."  Despite Castano's request, Ishol continued to send her e-mails.  On December 30, 2011, he sent her an e-mail advising that he had been contacted concerning her visa.  In the e-mail, Ishol added, "WE CAN STILL SAY HI TO EACH [OTHER]."  On January 27, 2012, Ishol sent another e-mail to Castano offering her $200 to clean a house he wanted cleaned.  Ishol again commented, "don't understand why we can't be nice and be friends of some type in a

nice way." On February 2, 2012, Ishol sent Castano a third e-mail indicating he was responding to a call that he had missed from her. During the hearing in this matter, however, Castano denied ever calling Ishol. In his e-mail, Ishol mentioned seeing Castano and her daughter "downtown," but being afraid to say hello. Ishol also mentioned seeing Castano in a blue car and congratulated her on driving.

[¶4.] By March 2012, Castano had moved into a new apartment. Although she had not given Ishol her new address, on March 2, she received an envelope in the mail with a bracelet inside, but no note. Ishol later admitted during the hearing in this matter that he had learned Castano's address through his position with Brookings Municipal Utilities as a meter reader. Ishol further admitted that he sent Castano the bracelet after coming across it while doing some unpacking and because he thought it must belong to her. About a week after Castano received the bracelet, her daughter was coming home from school and ran into Ishol in her and her mother's apartment building. Ishol attempted to converse with the child, but she was afraid of him and found him very intimidating.

[¶5.] Castano had at least two additional encounters with Ishol. In one instance, she was outside a house where she was doing some clean-up work and Ishol approached her and attempted to talk to her. Castano told Ishol to leave her alone and not to talk to her anymore. In another instance, Castano was with a companion at a local restaurant when Ishol approached her table to talk to her. Castano ignored him.

[¶6.] On March 13, 2012, Castano filed a form petition and affidavit for a domestic abuse protection order. Castano checked boxes on the petition alleging

Ishol: had made her fearful that he was about to cause her physical harm or bodily injury; willfully, maliciously, and repeatedly followed her; harassed her by pursuing a knowing and willful course of conduct which seriously alarmed, annoyed, or harassed her, with no legitimate purpose; showed a continuing pattern of harassment; and willfully, maliciously, and repeatedly harassed her by means of verbal, electronic, or digital media, or by mechanical, telegraphic, or written communication. Castano further alleged that Ishol had guns, was supposed to be on medication, and that when he stopped taking his meds he was very aggressive and dangerous. Castano requested a protection order extending to certain locations frequented by her and her daughter. The trial court issued a temporary protection order and set a hearing on a permanent order for March 21, 2012.

[¶7.]      Castano appeared at the March 21 hearing with the assistance of an interpreter, but without counsel. Ishol appeared with counsel. Indicating Castano "already went" because she had "filed the Petition," the trial court began by hearing Ishol's case. Ishol testified and offered various explanations for his contacts with Castano, attributing their personal encounters to chance or coincidence resulting from his work as a meter reader. Castano then cross-examined Ishol through her interpreter, but much of her examination turned into statements on her own behalf. Other than references to e-mails, the trial court struck Castano's statements as irrelevant. The trial court then gave Ishol's counsel an opportunity to cross-examine Castano about the e-mails.

[¶8.]      At the close of the hearing, the trial court granted the protection order for one year and made the order applicable to the extended areas requested by

Castano. The court subsequently entered a written protection order excluding Ishol from Castano's residence and from coming within 300 feet of her or her daughter. The order further excluded Ishol from the high school and Boys and Girls Club. Ishol appeals.

## Issue 1

[¶9.] **Whether Ishol's cross-examination was improperly restricted.**

[¶10.] As the hearing on this matter went on, the trial court focused on Ishol's e-mails, striking Castano's testimony when it drifted into other matters. When the court gave Ishol's counsel an opportunity to question Castano, it specifically limited counsel to, "[a]ny questions about the emails?" Ishol argues on appeal that this was an improper limitation of cross-examination.

> In a civil case, while the suppression of all cross-examination may amount to a denial of due process, restriction of cross-examination would rarely rise to constitutional dimensions, although it might amount to an abuse of discretion where the probative value of the excluded evidence was sufficiently high.

*Adam v. Adam*, 436 N.W.2d 266, 269 (S.D. 1989) (quoting 3 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 611-46 (1988)).

[¶11.] In *Silvia v. Duarte*, the Massachusetts Supreme Court specifically considered the denial of an opportunity to cross-examine a petitioner in that state's counterpart to a protection order proceeding. 657 N.E.2d 1262 (Mass. 1995). In its analysis, the court noted:

> A defendant has a general right to cross-examine witnesses against him. There may be circumstances in which the judge properly may deny that right in a [protection order] hearing, and certainly a judge may limit cross-examination for good cause in an exercise of discretion." . . . "[W]hether a defendant's

-4-

constitutional rights have been violated in a [protection order proceeding] will depend on the fairness of a particular proceeding."

*Id.* at 1263 (quoting *Frizado v. Frizado*, 651 N.E.2d 1206 (Mass. 1995)).

[¶12.]     In *Silvia*, the Massachusetts court upheld the trial court's denial of the respondent's request to cross-examine the petitioner largely on the basis of the trial court's knowledge of court records disclosing the respondent had a history of violence directed at the petitioner and others that had resulted in the respondent's imprisonment.  The court concluded the record concerning the respondent's past conduct available to the trial court and the trial court's previous experience with the respondent showed the denial of cross-examination was not an abuse of discretion or prejudicial because a rehearing would produce the same result.

[¶13.]     The record here, however, reflects no similar history of domestic violence.  Yet, the trial court granted a protection order on the basis that domestic abuse had occurred while, at the same time, denying Ishol's counsel the opportunity to cross-examine Castano on any issues of domestic violence beyond Ishol's e-mails. This was an abuse of discretion, which, as Ishol asserts, "deprived this Court of a record from which there may be meaningful review."  *See Davis v. Davis*, 1999 S.D. 116, ¶ 8, 598 N.W.2d 921, 922.

## Issue 2

[¶14.]     **Whether the trial court erred in failing to make adequate findings of fact.**

[¶15.]     Relying on *Shroyer v. Fanning*, 2010 S.D. 22, 780 N.W.2d 467, Ishol argues that the trial court failed to make adequate findings of fact to determine

whether the trial court abused its discretion in granting Castano a protection order. In *Shroyer*, the petitioner filed for a protection order against her former boyfriend on behalf of their daughter. The petition alleged sexual abuse of the daughter. A hearing was held and, at the close of the hearing, the trial court granted the protection order because: there was an ongoing police and child protection investigation; it was prudent to grant the order to allow the case to play out; and there was sufficient concern to warrant granting a protection order. The court made oral findings that: it had jurisdiction and venue; the mother and father were family or household members within the meaning of SDCL 25-10-1(2); by a preponderance of the evidence, domestic abuse had occurred; and the father had notice of the hearing and an opportunity to be heard. The court went on to complete a preprinted protection order form granting the protection order for eighteen months. On appeal, the father argued the trial court erred in not entering findings of fact to support its conclusion that a protection order was authorized by SDCL 25-10-5. This Court agreed, reasoning:

> Although the circuit court generally recited that the elements of a protection order had been shown, *i.e.*, jurisdiction, venue, status as a family or household member, and proper notice and opportunity to be heard, the circuit court merely concluded that domestic abuse had occurred. No findings, oral or written, support that conclusion. Mere concern about an ongoing and inconclusive police investigation does not support a finding of abuse. The circuit court's general statements did not "indicate which version of the evidence [it] believed" or "indicate how the evidence met the statutory elements of [domestic abuse]" to permit the issuance of the protection order. Therefore, in this case, the circuit court erred by not entering findings of fact and conclusions of law that would have permitted a "meaningful review" of whether the protection order was appropriately granted.

*Shroyer*, 2010 S.D. 22, ¶ 8, 780 N.W.2d at 470-71 (citations omitted). We went on to reverse and remand the protection order granted in *Shroyer*.

[¶16.]     *Shroyer* was followed a year later in *March v. Thursby*, 2011 S.D. 73, 806 N.W.2d 239. In *March*, a petitioner filed a petition for a protection order. A hearing was held in which the petitioner testified as to the reasons for the order. At the close of the hearing, the trial court orally indicated that it found the petitioner's testimony credible and granted her a protection order for two years. The actual protection order was a pre-printed form containing boxes checked for factual findings. The court checked a box indicating petitioner had suffered physical injury resulting from an assault or crime of violence. However, the testimony at the hearing was about stalking and the box concerning stalking was not checked. After the trial court rotated off the county bench, the respondent filed a motion for detailed findings of fact and conclusions of law. The successor judge held a hearing and determined she could not change the findings and conclusions made by the previous judge. The respondent appealed, arguing the protection order was not supported by comprehensive findings and conclusions. This Court agreed, citing *Shroyer* and concluding:

> Here, the circuit court indicated that it believed [the petitioner's] version of the events. But the written finding did not correspond with the oral testimony of [the petitioner]. Findings must be entered "with sufficient specificity to permit meaningful review." Although the court indicated it believed [the petitioner's] version of the events, it did not "indicate how the evidence met the statutory elements of stalking." The circuit court failed to "insure that the findings of fact and conclusions of law are clearly entered." This failure requires reversal.

*March*, 2011 S.D. 73, ¶ 20, 806 N.W.2d at 244 (citations omitted).

[¶17.]      The protection order here contains defects like those in *Shroyer* and *March*. It is a form order on which the trial court checked boxes finding that: it had jurisdiction; the parties had reasonable notice and opportunity to be heard; jurisdiction and venue were properly before the court; the parties were "family or household members" within the meaning of SDCL 25-10-1(2); by a preponderance of evidence "domestic abuse" as defined by SDCL 25-10-1(1) had occurred; and Ishol had actual notice of the hearing and an opportunity to participate. As in *Shroyer*, no findings, oral or written, support the conclusion as to domestic abuse. Further, the trial court's statements did not indicate which version of the evidence it believed or how the evidence met the elements of domestic abuse so as to permit issuance of a protection order. The trial court simply pronounced the parties were household members, that domestic abuse occurred, and that the parties should have no further contact. When Ishol's counsel correctly pointed out the only testimony was that Castano stayed at a domestic abuse shelter and that there was no testimony that domestic abuse occurred, the court replied "there was" and warned counsel against further argument. As in *Shroyer* and *March*, therefore, there was a failure to enter findings of fact and conclusions of law with sufficient specificity to permit us to meaningfully review whether the protection order was appropriately granted.

[¶18.]      Reversed.

[¶19.]      KONENKAMP, ZINTER, SEVERSON and WILBUR, Justices, concur.