#28152-r-DG
**2018 S.D. 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SARAH THOMPSON,                                    Petitioner and Appellee,

   v.

WAMBLI BEAR RUNNER,                               Respondent and Appellant.

* * * *
APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA
* * * *
THE HONORABLE JEFFREY R. CONNOLLY
Judge
* * * *

SHILOH M. MACNALLY
Rapid City, South Dakota                          Attorney for petitioner and
                                                  appellee.

KELLY M. PETERSON of
Fitzgerald Law Firm
Rapid City, South Dakota                          Attorneys for respondent and
                                                  appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2018
OPINION FILED **07/18/18**

#28152

GILBERTSON, Chief Justice

[¶1.] Sarah Thompson filed a petition for a protection order against Wambli Bear Runner for stalking under SDCL 22-19A-1. After a hearing, the circuit court granted Sarah's petition for a protection order on the grounds that some of Wambli's actions and Facebook posts concerning Sarah amounted to stalking. Wambli appeals the circuit court's order. Wambli argues: (1) the circuit court's protection order was not supported by proper findings; (2) the circuit court erred in finding that Wambli's conduct constituted stalking under SDCL 22-19A-1; and (3) the protection order is unconstitutionally vague, violating Wambli's due-process rights. We reverse and remand.

### Facts and Procedural History

[¶2.] Sarah and Wambli live across the street from each other in Rapid City, South Dakota, in the tight-knit community of Lakota Homes. They also attended school together at Oglala Lakota College. Sarah and Wambli first started communicating in 2014 when Sarah began dating Wambli's ex-boyfriend, Clay Ramsey. Sarah and Clay dated for only three months.

[¶3.] On December 19, 2014, Wambli initiated a heated text conversation informing Sarah that she had recently been physically involved with Clay. Both Sarah and Wambli exchanged insults in the private text conversation. Sarah called Wambli a bad mother, and Wambli stated that Sarah was a sore loser. The conversation was short-lived and the two did not communicate further until 2016.

[¶4.] On March 28, 2016, Wambli posted the following on Facebook:

> Its funny how some "women" are obviously fake and they really
> can't see their actions. Mother of the year over there is so

> desperate for a man she Hardly ever has her kids yet when she was living the "single" life secretly prowling, bitter and angry, she had a protection order against her ex and was using the kids against him and he couldn't even see his kids . . . now because of the her [sic] new man he has them all the time . . . i for one forever have my kids, my children are always home, I never sleep a night without them, and I'm completely involved in their lives/recreational sports yet I was called a "bad mother" by this same person . . . its none of my business what ppl do but when a person starts an argument with me . . . just know I'm hanging on to that and I'll forever be watching #yourenemy unless I get an apology!

(Ellipses in original.)

[¶5.]       In response to this message and Wambli's past conduct, Sarah notified Wambli's employer asking it to address Wambli's alleged cyberbullying. Wambli's employer, however, stated that it does not get involved in personal matters. Wambli responded to Sarah's inquiry on April 8, 2016, by naming Sarah in another Facebook post claiming that Sarah should focus on her own life and that Sarah was jealous. Three days later, Wambli posted another Facebook post commenting on a gift Sarah received from her boyfriend.

[¶6.]       In August 2016, Wambli wrote another Facebook post concerning Sarah, which stated in part:

> I'm probably lowering myself to this certain "girls" level but I'm going to state some facts by putting tjis [sic] out there. I've been dealing with my neighbors jealously, bitterness, speculation, gossip, assumptions, dramatic lies and trouble making for the past year and a half . . . she plays victim all to well and wants attention/pity way to much . . . has the audacity to say I'm jealous because she's beautiful (which she is not). . . .

[¶7.]       Sarah testified that Wambli would repeatedly use fake names in an attempt to "friend" her on Facebook. Using one of these names, Wambli messaged Sarah on October 24, 2016, in a private conversation using Facebook Messenger.

Wambli insisted during the conversation that Sarah should leave Clay and Wambli alone and that Sarah should "disappear." On the same day this conversation took place, Wambli again posted a message on Facebook commenting on how "my neighbor" could not handle a discussion and how she was threatened that law enforcement would be called.

[¶8.] On October 25, 2016, Wambli then sent a complaint to Sarah's place of employment claiming Sarah had participated in unethical conduct and misrepresentation. Wambli also accused Sarah of violating the privacy and confidentiality of her employer's patients. After finding out about Wambli's complaint, Sarah filed a police report. Wambli posted a message on Facebook reciting that the police had called her and that Sarah was a "cry baby." Sarah then filed a petition for a protection order against Wambli for stalking on October 26, 2016, as a result of Wambli's harassing behavior and Facebook posts.

[¶9.] The circuit court denied the temporary protection order and set the matter for a hearing. In the interim, Wambli sent a second complaint to Sarah's employer on November 7, 2016, informing them of the protection order. Wambli also posted a Facebook message on December 15, 2016, about Sarah's son and an incident that occurred at his school. Sarah testified that Wambli's Facebook post caused the community members to raise concerns with the housing manager about Sarah's son living in the area.

[¶10.] The circuit court held a two-day hearing on Sarah's petition for a permanent protection order from January 31 to February 1, 2017. The circuit court listened to testimony from seven witnesses and reviewed 25 exhibits. Ultimately,

the circuit court found by a preponderance of the evidence that Wambli "pursued a knowing and willful course of conduct which seriously alarmed or harassed with no legitimate purpose, and also that she willfully, maliciously and repeatedly harassed [Sarah] through electronic means." The circuit court concluded that under SDCL 22-19A-1, Wambli's conduct constituted stalking, and it granted Sarah's petition for a protection order.

[¶11.] Wambli appeals the protection order, raising three issues for our review:

1. Whether the protection order was supported by proper findings.

2. Whether the circuit court erred in finding Wambli's conduct constituted stalking under SDCL 22-19A-1.

3. Whether the protection order is vague and violates Wambli's due-process rights.

### Standard of Review

[¶12.] We review a circuit court's grant or denial of a protection order under a two-step process: first, by reviewing the circuit court's findings of fact for clear error; and second, by reviewing the circuit court's "ultimate decision for an abuse of discretion." *Donat v. Johnson*, 2015 S.D. 16, ¶ 13, 862 N.W.2d 122, 127. "The circuit court's findings of fact will not be set aside unless 'we are left with a "definite and firm conviction that a mistake has been made."'" *Erickson v. Earley*, 2016 S.D. 37, ¶ 8, 878 N.W.2d 631, 633-34 (quoting *Shroyer v. Fanning*, 2010 S.D. 22, ¶ 6, 780 N.W.2d 467, 469). "An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable." *Id.* (quoting *Blair-Arch v. Arch*, 2014

S.D. 94, ¶ 10, 857 N.W.2d 874, 877).  We review constitutional challenges under the de novo standard of review.  *State v. Martin*, 2003 S.D. 153, ¶ 13, 647 N.W.2d 291, 296.

## Analysis and Decision

[¶13.]       *1.        Whether the protection order was supported by proper findings.*

[¶14.]       Wambli argues that the circuit court did not enter sufficient findings of fact to support the protection order.  She contends that the circuit court failed to state what activities or speech it found to be harassing.  We agree with Wambli's contention that inadequate findings were made.

[¶15.]       "It is well-settled law that it is the [circuit] court's duty to make required findings of fact, and the failure to do so constitutes reversible error." *Doremus v. Morrow*, 2017 S.D. 26, ¶ 10, 897 N.W.2d 341, 345 (quoting *Repp v. Van Someren*, 2015 S.D. 53, ¶ 10, 866 N.W.2d 122, 126).  Meaningful review of the circuit court's decision cannot take place "without the [circuit] court's reasons for ruling the way it did." *Shroyer*, 2010 S.D. 22, ¶ 7, 780 N.W.2d at 470 (quoting *Goeden v. Daum*, 2003 S.D. 91, ¶ 7, 688 N.W.2d 108, 110).  "Ultimately, the question is whether the circuit court's findings sufficiently address the facts of the case under the specific elements of stalking at issue such that we may determine whether 'the evidence met the statutory elements of stalking.'" *Doremus*, 2017 S.D. 26, ¶ 10, 897 N.W.2d at 345 (quoting *Repp*, 2015 S.D. 53, ¶ 11, 866 N.W.2d at 126).

[¶16.]       SDCL 22-19A-1 provides in part that "[n]o person may . . . [w]illfully, maliciously, and repeatedly harass another person by means of any verbal, electronic, digital media, mechanical, telegraphic, or written communication."  The

circuit court delineated these elements, finding that "willful and malicious and repeated harassment by terms of electronic, verbal and written communication took place[.]" Furthermore, the court mentioned that Wambli's conduct met the applicable sub-elements of SDCL 22-19A-1. See SDCL 22-19A-4 ("[H]arasses means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose."); SDCL 22-19A-5 ("[C]ourse of conduct means a pattern of conduct . . . over a period of time, however short, evidencing a continuity of purpose.").

[¶17.] Nonetheless, the circuit court's findings merely parrot statutory text and do not clearly identify "how the evidence met the statutory elements of stalking under SDCL 22-19A-1." *Repp*, 2015 S.D. 53, ¶ 11, 866 N.W.2d at 126. The court stated: "I'm finding that there has been a preponderance of the evidence that harassment has taken place in the past, and that the course of conduct was not entirely constituted—or protected Constitutionally." The circuit court mirrored this statement by checking the box on the order-of-protection form finding that stalking had taken place under SDCL 22-19A-1. Also, without elaborating further in its response to questions regarding what conduct it considered to constitute stalking, the court stated:

> I don't think that everything that I am finding was harassment
> or was conduct—was a course of conduct, not all of it—and I'm
> not sure of any of it, but certainly not all of it was protected
> activity as I sit here now. I can't figure out—I mean, I'm not
> going to predict and say this is where the line is.

What is missing from the circuit court's findings is conduct that it considered to be harassment. General statements like those made by the circuit court do not provide us with a "basis for [the court's] conclusions with sufficient specificity to permit a

meaningful review." *Goeden*, 2003 S.D. 91, ¶ 9, 688 N.W.2d at 111. Therefore, we reverse the decision of the circuit court and remand the case to permit the court to identify which of Wambli's acts or conduct constituted stalking.

[¶18.]       Based on our decision to remand for proper findings, we need not address Wambli's remaining issues as "much guess-work would be involved in any attempt to review" them. *See Repp*, 2015 S.D. 53, ¶ 13, 866 N.W.2d at 127 (quoting *Judstra v. Donelan*, 2006 S.D. 32, ¶ 8, 712 N.W.2d 866, 868).

[¶19.]       ZINTER, KERN, and JENSEN, Justices, and SEVERSON, Retired Justice, concur.

[¶20.]       SALTER, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.