#29523-r-MES
**2021 S.D. 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

AME JO BATCHELDER,                                      Petitioner and Appellee,

    v.

MATTHEW JAMES BATCHELDER,                    Respondent and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT A. MANDEL
Retired Judge

\* \* \* \*

PATRICIA A. MEYERS
Rapid City, South Dakota                          Attorney for petitioner and
                                                                   appellee.


JOHN S. RUSCH
Rensch Law Office
Rapid City, South Dakota                          Attorneys for respondent and
                                                                   appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
AUGUST 23, 2021
OPINION FILED **10/13/21**

#29523

SALTER, Justice

[¶1.]	In a separate, initial proceeding, Ame Batchelder (Ame) petitioned for a protection order, alleging domestic abuse by her former husband, Matthew Batchelder (Matthew).  The circuit court issued a temporary ex parte protection order but ultimately dismissed Ame's petition when she failed to appear at the hearing.  However, at roughly the same time her original petition was dismissed, Ame sought a new protection order against Matthew.  The court issued a new temporary ex parte protection order and eventually entered a permanent protection order against Matthew.

[¶2.]	Despite expressing its reluctance about the appropriateness of the remedy, the court indicated the protection order was necessary to ease the contentious relationship between the parties who share a minor child.  The court checked a box on the preprinted protection order form indicating it had found the existence of domestic abuse, but it did not issue any oral or written findings.  Matthew now appeals, claiming the lack of findings and legal justification render the protection order infirm.  Matthew also argues that the denial of the earlier protection order precludes what he views as relitigation of the same issues under the doctrine of collateral estoppel.  We reverse.

**Factual and Procedural Background**

[¶3.]	Ame and Matthew were married on February 26, 2005, in Rapid City, where they continue to reside.  They have one child, A.B., who was born in 2006.  Ame commenced a divorce action in 2019, and the couple resolved the case without a trial under the terms of a stipulation, which provided, among other things, that

the parties would exercise joint legal and physical custody of A.B. The stipulation also provided that "[c]ommunication between the parties shall mostly be via text-message or Email and deal only with [A.B.]" The circuit court incorporated the stipulation into a judgment and decree of divorce, which was issued on February 3, 2020.[1]

[¶4.] The parties were subsequently involved in two protection order actions in 2020, both commenced by Ame. This appeal concerns the second, more recent proceeding, though certain procedural facts relating to the initial proceeding are relevant to a complete narration of the facts. Unfortunately, however, only select portions of the record from the initial proceeding appear in the current record, leaving voids in the background information. Where appropriate, we will use what appear to be undisputed contextual details solely to assist with our exposition of the facts.

[¶5.] It appears from the parties' briefs that Ame filed the first petition for a protection order on July 7, 2020, alleging that Matthew had "inflicted fear . . . and/or . . . was about to cause physical harm or bodily injury" to her.[2] *See* SDCL ch. 25-10 (authorizing courts to issue protection orders in cases involving domestic

---

1. The same circuit court judge presided over the parties' divorce action, the underlying protection order proceeding, and the protection order case that is the subject of this appeal.

2. The petition is not included in the record. It is part of the appendix attached to Ame's appellate brief, but this practice does not comply with our rules for preparing appendices. *See Klutman v. Sioux Falls Storm*, 2009 S.D. 55, ¶ 37, 769 N.W.2d 440, 454 ("Documents in the appendix must be included within, and should be cross-referenced to, the settled record." (citing SDCL 15-26A-60(8)).

abuse). This underlying action was assigned case number TPO 20-369 by the Pennington County Clerk of Courts. The circuit court granted an ex parte temporary protection order that was set to expire on July 28 but was later continued to September 8 and then to December 7. The circumstances leading up to this last extension of this initial temporary order are, however, not entirely clear from the record.

[¶6.] The parties seem to agree that the circuit court conducted a hearing on the petition in TPO 20-369 on September 8, 2020. Matthew alleges that during the September 8 hearing, the court determined that his "actions did not amount to harassment." Despite that purported finding, Matthew claims the court, "as a means to keep the peace[,] . . . extended [the order] another three months, to December 7, 2020."[3] However, there is no hearing transcript included in the current record, and the order continuing the temporary order, which is included in the record, does not reference a September 8 hearing or any findings by the court.[4] The September 8 order was styled as a modification of the original temporary order

---

3. As the name suggests, temporary protection orders are meant to be short-lived. "An ex parte temporary protection order is effective for a period of thirty days" but may be extended an additional thirty days upon a finding of good cause. SDCL 25-10-7. Beyond this, a court has no authority to unilaterally extend the length of a temporary protection order and may do so only if it "finds good cause for the additional continuance and: (1) The parties stipulate to an additional continuance; or (2) The court finds that law enforcement is unable to locate the respondent for purposes of service of the ex parte protection order." SDCL 25-10-7(1)-(2).

4. The extended temporary order in TPO 20-369 is designated as ex parte though the parties seem to acknowledge they both attended the September 8 hearing.

and required Matthew to observe minimum distances from Ame, her residence, and her place of employment.

[¶7.]     In their appellate submissions, both parties describe the September 8 temporary order as a means of continuing the original temporary order in TPO 20-369, leading up to a final hearing scheduled for December 7, 2020.  In the interim, the circuit court entered a separate order in the parties' divorce action, appointing a parenting coordinator to assist with the resolution of parenting disputes and directing the parties to communicate using the Our Family Wizard parenting application (the OFW app).

[¶8.]     On December 7, 2020, Ame filed another sworn petition for a protection order against Matthew.  This second protection order action is the one currently before us and was designated as TPO 20-726.  The petition alleged, among other things, that Matthew was critical of Ame's parenting methods in communications using the OFW app, had violated the temporary protection order in TPO 20-369, and was surreptitiously monitoring her telephone conversations.[5]  The circuit court issued a new ex parte temporary protection order in TPO 20-726 on December 7.

[¶9.]     Also on December 7, the circuit court conducted the previously scheduled hearing in TPO 20-369.  Ame did not appear at the hearing.  The court dismissed the petition, and the temporary order expired by its own terms.

---

5.     Ame also alleged in the petition that Matthew told her to "keep [her] mouth shut and not to talk to authorities" concerning an unrelated criminal case involving Matthew.

However, the new ex parte temporary order in TPO 20-726 contained the same essential provisions as the predecessor temporary order in TPO 20-369.

[¶10.]     The circuit court conducted a hearing on Ame's petition in TPO 20-726 on January 4, 2021.  At the outset, Ame's counsel asked the circuit court "to take judicial notice of a prior protection order, number is [TPO 20-369], which expired on December 7 of 2020."  Matthew's attorney expressed no opposition and explained that he was moving to dismiss the current petition based upon the resolution of the TPO 20-369 case.  In Matthew's view, he prevailed at the September 8 hearing on Ame's first petition, and the new action in TPO 20-726 was an improper effort to relitigate the same factual issues.  The motion to dismiss acknowledged that the latter petition contained new allegations occurring since October 2020 but claimed that they were "not supported by [the parenting coordinator.]"[6]

[¶11.]     In any event, the circuit court never ruled on the request for judicial notice, perhaps owing to the fact that the motion to dismiss prompted additional, lengthy arguments from the lawyers.  These arguments concerned the details of the untranscribed September 8 hearing in TPO 20-369 and the merits of the current petition in TPO 20-726.  The court denied the motion to dismiss insofar as the motion alleged the allegations in TPO 20-726 were factually unsupported:

> Well, let me start by saying this.  The purpose of temporary
> protection orders is not to protect anyone from ever having any

---

6.     Matthew's motion to dismiss is dated January 3, 2021, but it was not filed with the clerk until April 14, 2021—after the notice of appeal.  During the pendency of this appeal, Matthew's counsel moved to supplement the record with this motion, stating that he had handed the motion to the circuit court judge during the January 4 hearing but had not filed it.  We granted the motion to supplement the record without opposition from Ame.

arguments or harassment or disagreements in their life. I think that people think that it is, but it's not. However, I'll hear what she has to say, I'll let you put the testimony on.

[¶12.] Ame testified briefly and claimed principally that Matthew used the OFW app in a way that was not authorized by the divorce stipulation or the circuit court's order in the divorce case appointing the parenting coordinator. In her view, Matthew used the OFW app to criticize her parenting and to seek reimbursement of her share of expenses related to A.B., rather than limiting communication to only the topic of A.B.'s care. Ame further testified that she suspected she was "being tracked or listened to somehow" by Matthew, claiming he inexplicably knew that she had recently traveled to Vermillion. She did not testify that Matthew had harmed her or threatened to harm her or that she feared he would harm her. Matthew did not testify, and there was no additional evidence.

[¶13.] During final arguments, the circuit court asked Ame's attorney specifically, "what are you actually asking for in the way of a protection order?" Counsel responded as follows:

> That he not be allowed to use this OurFamilyWizard in this manner; that he only be ordered to post to the OurFamilyWizard, which he can do, the bills, the dollar amount of the bill, and scheduling events, and [A.B.'s school] assignments.

[¶14.] Despite this narrow scope of the requested relief, the circuit court entered a permanent protection order for one year, prohibiting Matthew from being within 100 yards of Ame, her residence, or her place of employment. The court also continued the requirement that the parties use the OFW app and directed that it be "limited to child's healthcare, education, expenses, scheduling, school related

activities, parenting coordinator requests or emergency situations." As it related to bills for A.B., the court stated that Matthew is "limited to noting the amount of the bill and who the bill is to be paid to. Otherwise no contact is allowed."

[¶15.]     In its stated rationale, issued orally at the conclusion of the hearing, the circuit court did not assess the evidence or apply the legal standards governing the issuance of protection orders. Instead, it based its decision on an effort to ease tensions between the parties in their ongoing effort to co-parent A.B.:

> I am going to put the protection order in place for a period of one year, no contact, with the exception, obviously, through this FamilyWizard, or whatever it's called, but within the limitations stated by Ms. Meyers, that they be things regarding visitation . . . . I frankly don't like to do this, but I don't see anything else to do that's going to work in this case. If we can make it through a year and not have this continue, great, it shouldn't, and it's certainly of -- does no service to the children, which is the primary objective of this Court, not the parents . . . . *But, as I say, I'm frankly doing this 'cause I don't know any other good solution for this. But I really, in general, don't think this is the purpose or function of protection orders.* And it may end up with the divorce case being reopened and further action in that. I would suggest it would be a lot cheaper for both parties involved to just get along in a non-antagonistic way, but I can't stand there 24 hours a day ensuring that, so that's why I'm going this route.

(Emphasis added.)

[¶16.]     The court checked a box on a pre-printed protection order form that stated: "Having considered the evidence presented and any affidavits and pleadings on file, this Court FINDS . . . [b]y a preponderance of the evidence that 'domestic

abuse' as defined by SDCL § 25-10-1(1) has occurred[.]"[7] The court made no additional findings, oral or written.

[¶17.] Matthew now appeals raising the following issues, which we have restated as:

>    1. Whether the circuit court erred by entering the permanent protection order without factual or legal justification.
>
>    2. Whether the circuit court was collaterally estopped from making factual determinations in TPO 20-726.

## Standard of Review

[¶18.] Ordinarily we review a circuit court's decision to grant or deny a protection order by first assessing the court's findings of fact for clear error and, second, by considering the "court's ultimate decision for an abuse of discretion." *Thompson v. Bear Runner*, 2018 S.D. 57, ¶ 12, 916 N.W.2d 127, 130 (citation omitted). Both components of this review reflect deference to the unique position of the trial court.[8] But under either standard, our effort to undertake meaningful

---

7. Domestic abuse is defined in SDCL 25-10-1(1) as "physical harm, bodily injury, or attempts to cause physical harm or bodily injury, or the infliction of fear of imminent physical harm or bodily injury" when it occurs between people in certain qualifying relationships, such as former spouses. *See* SDCL 25-10-3.1 (listing qualifying relationships). Stalking, as defined in SDCL chapter 22-19A, and violations of existing protection orders, as outlined in SDCL 25-10-13, may also constitute "domestic abuse" if the act is committed by a person in a qualifying relationship. SDCL 25-10-1(1).

8. "The circuit court's findings of fact will not be set aside unless we are left with a definite and firm conviction that a mistake has been made. An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable." *Bear Runner*, 2018 S.D. 57, ¶ 12, 916 N.W.2d at 130 (internal citations and quotation marks omitted).

review is complicated where the court does not make findings specific to the evidentiary record before it, essentially failing to communicate to the parties, as well as this Court, the particular reasons for its decision.

[¶19.] Of course, the circuit court's findings must also correspond to the statutory standards that serve as the bases for issuing a permanent protection order. This determination is a legal question that we review de novo. *Trumm v. Cleaver*, 2013 S.D. 85, ¶ 8, 841 N.W.2d 22, 24 (citation omitted).

**Analysis and Decision**

*Factual and Legal Justification for Protection Orders*

[¶20.] As relevant to our discussion here, a court can issue protection orders in instances where it finds it necessary to protect a petitioning party from domestic abuse or stalking by the respondent. *See* SDCL 22-19A-11 (describing protection order remedy for stalking); SDCL ch. 25-10 (providing protection order remedy in cases of domestic abuse). Under either theory, the action is tried to a court sitting without a jury. *See* SDCL 22-19A-11 (authorizing the issuance of a protection order if a "court finds by a preponderance of the evidence that stalking has taken place"); SDCL 25-10-5 (authorizing a protection order if a "court finds by a preponderance of the evidence that domestic abuse has taken place").

[¶21.] Generally, our rules of civil procedure require that "[i]n all actions tried upon the facts without a jury . . . the court shall, unless waived as provided in § 15-6-52(b), find the facts specially and state separately its conclusions of law[.]" SDCL 15-6-52(a). We have held that the findings-of-fact requirement serves three important purposes, some legal and some prudential:

> The purpose of findings of fact is threefold: to aid the appellate court in reviewing the basis for the trial court's decision; to make it clear what the court decided should estoppel or res judicata be raised in later cases; and to help insure that the trial judge's process of adjudication is done carefully.

*Toft v. Toft*, 2006 S.D. 91, ¶ 12, 723 N.W.2d 546, 550 (citation omitted).

[¶22.] A circuit court's failure to make sufficient findings is, itself, a basis for reversal. *See Bear Runner*, 2018 S.D. 57, ¶ 15, 916 N.W.2d at 130 ("It is well-settled law that it is the [circuit] court's duty to make required findings of fact, and the failure to do so constitutes reversible error." (citation omitted)).  However, though erroneous in the sense that failing to make specific findings does not comply with SDCL 15-6-52(a), the error is not jurisdictional and may not *require* reversal in certain cases. *Toft*, 2006 S.D. 91, ¶ 11, 723 N.W.2d at 550.  Consequently, "an appellate court may decide the appeal without further findings if it feels it is in a position to do so." *Id.* (citation omitted).  "Ultimately, the question is whether the circuit court's findings sufficiently address the facts of the case under the specific elements of [the claim] at issue such that we may determine whether the evidence met the statutory elements [justifying relief]." *Doremus v. Morrow*, 2017 S.D. 26, ¶ 10, 897 N.W.2d 341, 345 (citation and internal quotation marks omitted).

[¶23.] We have recognized the exigencies of protection order proceedings may, in some instances, prompt trial courts "to relax procedural and evidentiary rules normally applied in other civil or divorce proceedings." *Goeden v. Daum*, 2003 S.D. 91, ¶ 9, 668 N.W.2d 108, 111.  We have, however, also recognized the unyielding obligation of these courts to determine the existence of "crucial element[s]"

necessary to justify relief and the need to issue specific findings of fact and conclusions of law. *Id.*[9]

[¶24.] Here, the circuit court made no findings of fact other than the generic determination stated in the box it checked on the standard form protection order, indicating that it found by a preponderance of the evidence that domestic abuse had occurred. Left unsaid by the court is any indication that it believed Ame's testimony or any factual justification for the entry of a protection order.

[¶25.] There is, however, a more fundamental flaw in the circuit court's decision to issue the permanent protection order here, beyond merely the lack of factual findings. The record unmistakably reveals an overt effort by the court to use the permanent protection order remedy to stabilize the high-conflict relationship between the parties—not to protect Ame. In fact, the court made no pretense about assessing the evidence under the correct legal standards for protection orders. And

---

9. We have reversed the entry of protection orders in cases where circuit courts failed to make credibility determinations regarding the evidence before them or made only general statements and used a preprinted form to enter its findings of facts. *See Bear Runner*, 2018 S.D. 57, ¶¶ 17-18, 916 N.W.2d at 131 (reversing the decision to grant a protection order and remanding for "proper findings" when the court simply "check[ed] the box on the order-of-protection form finding that stalking had taken place"); *Shroyer v. Fanning*, 2010 S.D. 22, ¶¶ 8, 12, 780 N.W.2d 467, 470-73 (reversing a domestic abuse protection order because "the circuit court merely concluded that domestic abuse had occurred" without issuing "findings, oral or written, [to] support that conclusion"); *Repp v. Van Someren*, 2015 S.D. 53, ¶¶ 10-11, 866 N.W.2d 122, 126 (reversing a protection order for failure to enter findings "with sufficient specificity to permit meaningful review" (citation omitted)); *Castano v. Ishol*, 2012 S.D. 85, ¶¶ 17-18, 824 N.W.2d 116, 121 (reversing a protection order when the circuit "court's statements did not indicate which version of the evidence it believed"). *But see Doremus*, 2017 S.D. 26, ¶¶ 11, 15, 897 N.W.2d at 345-46 (affirming the entry of a protection order despite limited conclusory findings because "under the facts of [the] case," the findings were "sufficient to allow . . . meaningful[] review").

though it expressed misgivings about using the protection order remedy in this way, the court plainly indicated that it did not "see anything else to do that's going to work in this case." While we can appreciate the court's weariness with the parties' quarreling and its stated goal of addressing A.B.'s best interests, the court cannot seek to further this end under a utilitarian view that overlooks the basic principles associated with the protection order remedy.[10]

[¶26.] The lack of factual findings would be problematic in its own right, but it is particularly troublesome here because the circuit court seemed to understand that a protection order was not authorized and that the acrimony between the parties was better addressed in the divorce action. This disconnection between the rules and the remedy requires us to reverse the court's decision to enter a permanent protection order.

***Collateral Estoppel***

[¶27.] Matthew asserts an additional argument, claiming the circuit court was collaterally estopped from making factual determinations in TPO 20-726, alleging they are precluded by findings made at the September 8, 2020 hearing regarding TPO 20-369. However, three readily apparent reasons prevent us from reaching this question. First, given the limited record before us, we cannot determine what, if anything, the circuit court decided at the September 8 hearing in TPO 20-369, much less that it was identical to a particular fact or issue in TPO 20-726. Second, as indicated above, the court did not actually make any factual

---

10. The circuit court did not suggest in any way that Ame's testimony would support a finding of domestic abuse.

determinations in TPO 20-726 relative to the legal bases for protection orders. And, finally, it is unnecessary to address the issue of collateral estoppel given our disposition of this case.

## Conclusion

[¶28.] Permanent protection orders, like all other judicial orders, must rest upon sufficient factual and legal support. The circuit court's order in TPO 20-726 had neither. We must, therefore, reverse the order granting the permanent protection order.

[¶29.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.